# No. 23-30888

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States of America,

*Plaintiff – Appellee,*

v.

Nghia Le,

*Defendant – Appellant,*

## On Appeal from
United States District Court for the Eastern District of Louisiana
2:21-CR-80-3

## BRIEF OF APPELLANT NGHIA LE

RESPECTFULLY SUBMITTED BY:

/s/Deborah Ann Pearce
Law Offices of Deborah Pearce
141 Allen Toussaint Boulevard
New Orleans, LA 70124-0000
(512) 809-6269 (telephone)
(504) 324-0882 (facsimile)
federalappeals@cox.net

*CJA-Appointed Counsel for Nghia Le*

# CERTIFICATE OF INTERESTED PERSONS

*United States v. Nghia Le*
No. 23-30888

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Cɪʀ Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
| --- | --- |
| United States of America | Diane Copes of U.S. Attorney's Office New Orleans, LA |
| United States of America | Kevin Boitmann of U.S. Attorney's Office New Orleans, LA |
| United States of America | Michael Trummel of U.S. Attorney's Office New Orleans, LA |

| Appellants: | Counsel for Appellants: |
| --- | --- |
| Nghia Le | Deborah Pearce of Law Offices of Deborah Pearce New Orleans, LA |
| Nghia Le | Claude J. Kelly of Federal Public Defender's Office New Orleans, LA |
| Nghia Le | Deborah Majeeda Snead of D. Majeeda Snead Attorney at Law New Orleans, LA |

| Other Interested Parties: | Counsel for Interested Parties: |
|---|---|
| Ryan Negrotto (co-defendant) | Celia Clary Rhoads of Federal Public Defender's Office New Orleans, LA |
| Ryan Negrotto (co-defendant) | Claude J. Kelly of Federal Public Defender's Office New Orleans, LA |
| Ryan Negrotto (co-defendant) | Frank G. DeSalvo of Frank G. DeSalvo, APLC of New Orleans, LA |
| Ryan Negrotto (co-defendant) | Warner Bartlett Thompson of Federal Public Defender's Office New Orleans, LA |
| Brandon Martinez (co-defendant) | Brian J. Capitelli of Capitelli & Wicker New Orleans, LA |
| Brandon Martinez (co-defendant) | Claude J. Kelly of Federal Public Defender's Office New Orleans, LA |
| Brandon Martinez (co-defendant) | Tyffani A. Lauve of Mouledoux, Bland, Legrand & Brackett LLC New Orleans, LA |

/s/Deborah Ann Pearce
*CJA Counsel for Nghia Le*

## STATEMENT REGARDING ORAL ARGUMENT

Appellant, Nghia Le, respectfully requests oral argument in this case, which resulted in a lengthy 195-month sentence for a defendant with no criminal history. Mr. Le's appeal raises the legal inadequacy of the factual record for application of a sentencing enhancement for "maintaining" a drug premises under U.S.S.G. § 2D1.1(b)(12). The district court failed to analyze § 2D1.1(b)(12)'s legal requirements and application notes (which were not met) in deciding that this sentencing enhancement applied to Mr. Le. Mr. Le also raises the sentencing disparity between methamphetamine (actual) and methamphetamine (mixture) as well as other serious drugs, for punishment purposes. Either of these issues, if successful, will decrease Mr. Le's sentencing guidelines range, in this case where the district judge expressly declared that he was sentencing Mr. Le to "the lowest end of the guidelines." Thus, oral argument will assist the Court in determining whether Mr. Le's sentence should be vacated and the case should be remanded for resentencing.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS .........................................ii

STATEMENT REGARDING ORAL ARGUMENT ................................iv

TABLE OF CONTENTS ........................................................................v

TABLE OF AUTHORITIES..................................................................vii

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF THE ISSUES.............................................................1

STATEMENT OF THE CASE ................................................................1

SUMMARY OF THE ARGUMENT ........................................................9

ARGUMENT ......................................................................................10

I.   The District Court Failed to Properly Calculate and Consider
     Mr. Le's Sentencing Guidelines Range .............................................11

     A.   *Standard of Review* ................................................................12

     B.   *The Record Must Contain Sufficient Facts to Demonstrate
          that Each Element of the Enhancement Has Been Met* ..........12

          1.   21 U.S.C. § 856(a)(1) and U.S.S.G. § 2D1.1(b)(12) Do
               Not Perfectly Overlap ....................................................13

          2.   The Conclusory Sentence in Mr. Le's Factual Basis
               Does Not Establish the Factual Predicate for
               Finding He "Maintained" the Premises...........................14

          3.   The Probation Office Did Not Apply the Correct Part
               of § 2D1.1(b)(12)'s Application Note ...............................17

C. Under this Circuit's Precedent and the Correct Part of § 2D1.1(b)(12)'s Application Note, The Factual Record is Legally Insufficient to Establish that Mr. Le "Maintained" the Motorcycle Shop ................................................. 19

II. The District Court's Sentence was Substantively Unreasonable .... 25

A. Standard of Review ..................................................... 26

B. The Sentencing Disparity Between Methamphetamine (Actual) and Methamphetamine (Mixture) as well as Other Drugs Results in Substantively Unreasonable Sentences ........ 26

CONCLUSION ............................................................... 32

CERTIFICATE OF SERVICE ............................................. 33

CERTIFICATE OF COMPLIANCE ...................................... 34

# TABLE OF AUTHORITIES

**<u>Cases</u>**                                                          **<u>Pages</u>**

*Gall v. United States,*
    552 U.S. 38 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 25

*Holguin-Hernandez v. United States,*
    140 S. Ct. 762 (2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Spears v. United States,*
    555 U.S. 261 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30–31

*United States v. Abrego,*
    997 F.3d 309 (5th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Adams,*
    961 F.2d 505 (5th Cir. 1992) (per curiam) . . . . . . . . . . . . . . . . . . . 17

*United States v. Aguilar-Alonzo,*
    944 F.3d 544 (5th Cir. 2019) . . . . . . . . . . . . . . . . . . . . 12–13, 14, 16

*United States v. Bean,*
    371 F. Supp. 3d 46 (D.N.H. 2019) . . . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Carillo,*
    440 F. Supp. 3d 1149 (E.D. Ca. 2020) . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Celestin,*
    No. 21-125, 2023 WL 2018004
    (E.D. La. Feb. 15, 2023) . . . . . . . . . . . . . . . . . . . . . . . . . 28–29, 30

*United States v. Devaney,*
    No. 23-10385, 2024 WL 195555
    (5th Cir. Jan. 18, 2024) (per curiam) (unpublished) . . . . . . . . . . . 32

*United States v. Ferguson*,
   No. 17-204 (JRT/BRT), 2018 WL 3682509
   (D. Minn. Aug. 2, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Guzman-Reyes*,
   853 F.3d 260 (5th Cir. 2017) . . . . . . . . . . . . . . . . 20, 21–22, 23, 24

*United States v. Harris*,
   702 F.3d 226 (5th Cir. 2012) (per curiam) . . . . . . . . . . . . 10, 16–18

*United States v. Harry,*
   313 F. Supp. 3d 969 (N.D. Iowa 2018) . . . . . . . . . . . . . . . . . . . . 30

*United States v. Hartle*,
   No. 4:16-cr-00233-BLW, 2017 WL 2608221
   (D. Idaho, June 15 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Havel*,
   4:21-CR-3075, 2023 WL 1930686
   (D. Neb. Feb. 10, 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Hayes*,
   948 F. Supp. 2d 1009 (N.D. Iowa 2013) . . . . . . . . . . . . . . . . . . . 30

*United States v. Hoover*,
   No. 4:17-cr-327-BLW, 2018 WL 5924500
   (D. Idaho Nov. 13, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Ibarra-Sandoval*,
   265 F. Supp. 3d 1249 (D.N.M. 2017) . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Jennings*,
   No. 4:16-cr-00048-BLW, 2017 WL 2609038
   (D. Idaho June 15, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Johnson*,
   379 F. Supp. 3d 1213 (M.D. Ala. 2019) . . . . . . . . . . . . . . . . . . . 30

*United States v. Jones,*
    969 F.3d 192 (5th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Lara,*
    23 F.4th 459 (5th Cir.),
    *cert. denied*, 142 S. Ct. 2790 (2022) . . . . . . . . . . . . . . . . . . . . . . . . . 31

*United States v. Lord,*
    915 F.3d 1009 (5th Cir. 2019) . . . . . . . . . . . . . . . . . . 11, 12, 21, 23

*United States v. Marek,*
    238 F.3d 310 (5th Cir. 2001) (en banc) . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Moreno,*
    583 F. Supp. 3d 739 (W.D. Va. 2019) . . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Morgan,*
    117 F.3d 849 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

*United States v. Nawanna,*
    321 F. Supp. 3d 943 (N.D. Iowa 2018) . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Ortega,*
    No. 09-400, 2010 WL 1994870
    (D. Neb. May 17, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Pereda,*
    No. 18-cr-00228-CMA, 2019 WL 463027
    (D. Colo. Feb. 6, 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Requena,*
    No.4:18-cr-175-BLW, 2019 WL 177932
    (D. Idaho Jan. 11, 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Robinson,*
    No. 3:21-CR-14-CWR-FKB-2, 2022 WL 17904534
    (S.D. Miss. Dec. 23, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Rodriguez,*
    382 F. Supp. 3d 892 (D. Ala. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Rome,*
    207 F.3d 251 (5th Cir. 2000) (per curiam) . . . . . . . . . . . . 12, 16, 17

*United States v. Stanford,*
    883 F.3d 500 (5th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . 24–25

*United States v. Whiteside,*
    747 F. App'x 387 (6th Cir. 2018) (unpublished) . . . . . . 11, 14, 23–24

## **Statutes and Rules**                    **Pages**

18 U.S.C. § 2  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

18 U.S.C. § 924(c)(1)(A)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5

18 U.S.C. § 3553(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 25, 26, 31

18 U.S.C. § 3742 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 12

21 U.S.C. § 841(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 5

21 U.S.C. § 841(b)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 5, 28

21 U.S.C. § 841(b)(1)(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5

21 U.S.C. § 846 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

21 U.S.C. § 856(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. App. P. 4(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## Sentencing Guidelines and Application Notes       __Pages__

U.S. Sent'g Guidelines Manual § 2D1.1(b)(12)
     (U.S. Sent'g Comm'n 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

U.S. Sent'g Guidelines Manual §2D1.1(b)(12) cmt. n.17
     (U.S. Sent'g Comm'n 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 19

U.S. Sent'g Guidelines Manual § 2D1.1(c)
     (U.S. Sent'g Comm'n 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

U.S. Sent'g Guidelines Manual § 2D1.1(c)(3)
     (U.S. Sent'g Comm'n 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

U.S. Sent'g Guidelines Manual § 2D1.1(c)(5)
     (U.S. Sent'g Comm'n 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

U.S. Sent'g Guidelines Manual ch. 5, pt. A
     (U.S. Sent'g Comm'n 2010) . . . . . . . . . . . . . . . . . . . . . . . . 25, 27,28


## Other Sources       __Pages__

Bryan A. Garner,
     *Redbook: A Manual on Legal Style* (2d ed., West 2006) . . . . . . . . 15

Factual Basis of Brandon Martinez,
     ECF No. 129, 2:21-cr-00080 (E.D. La. Aug. 17, 2023) . . . . . . 2, 3, 22

Factual Basis of Ryan Negrotto,
     ECF No. 121, 2:21-cr-00080 (E.D. La. July 7, 2023) . . . . . . . 2, 3, 22

U.S. Dep't of Justice Drug Enf't Admin.,
     *Drug Enforcement Administration 2020 National Drug
     Threat Assessment* (Mar. 2021), located at
     https://www.dea.gov/sites/default/files/2021-02/DIR-008-
     21%202020%20National%20Drug%20Threat%20Assessment
     _WEB.pdf . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

U.S. Sent'g Comm'n Final Priorities for Amendment Cycle,
    88 Fed. Reg. 60536 (Sept. 1, 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . 29

"Use." Merriam-Webster.com Dictionary,
    Merriam-Webster, located at https://www.merriam-
    webster.com/dictionary/use (Accessed 24 Apr. 2024) . . . . . . . . . . 24

William Strunk Jr. & E.B. White,
    *Elements of Style* (4th ed., Oxford Univ. Press 1999) . . . . . . . . . . 15

# JURISDICTIONAL STATEMENT

This appeal arises from a 195-month sentence following a plea of guilty without a plea agreement. The district court had jurisdiction under 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), (D), 846, 856(a)(1) and 18 U.S.C. §§ 2, 924(c)(1)(A)(i). Based on the district court's final judgment, ROA.134–40, RE.5, this Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. Appellant, Nghia Le, timely filed a notice of appeal. ROA.145, RE.2; Fed. R. App. P. 4(b).

# STATEMENT OF THE ISSUES

1. Did the district court commit reversible error by failing to properly calculate and consider Mr. Le's Sentencing Guidelines range?

2. Was Mr. Le's 195-month sentence substantively unreasonable, which would independently mandate resentencing?

# STATEMENT OF THE CASE

Based on a tip, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") utilized a confidential informant ("CI") and undercover agents ("UCs") to set up methamphetamine buys at a motorcycle shop located at 5926 Alost Street, New Orleans, Louisiana. ROA.105–06. Appellant, Nghia Le, did not own the shop, rent the shop,

live or sleep at the shop, store anything at the shop, exercise control over the shop, or have keys or the ability to access the shop, independently. ROA.204–05. Mr. Le only became aware of the shop when he brought his motorcycle there for repairs. ROA.130, 204.

According to the CI, co-defendants Ryan Negrotto and Brandon Martinez were frequently seen at the shop and were often observed selling drugs there.[1] The CI did not say the same things about Mr. Le. *See generally* ROA.104–10 (containing no statement that Mr. Le was "frequently observed" there or often seen selling drugs there). Instead, Mr. Le sold methamphetamine to the CI and UCs at the shop on two occasions, both of which occurred only after the shop renter, Mr. Negrotto, contacted Mr. Le to invite him to sell the drugs.[2] ROA.106–07

---

[1] *See* Factual Basis of Brandon Martinez 2, ECF No. 129, 2:21-cr-00080 (E.D. La. Aug. 17, 2023) ("The CI visited the shop numerous times and observed drug sales and heard drug sales being discussed. . . . The CI frequently observed MARTINEZ at the shop.); Factual Basis of Ryan Negrotto 3, ECF No. 121, 2:21-cr-00080 (E.D. La. July 7, 2023) ("The CI visited the shop numerous times and observed drug sales and heard drug sales being discussed. The CI further discovered that co-conspirator Ryan NEGROTTO was the co-renter of the shop.").

[2] *See supra* n.1 (Mr. Negrotto rented the shop). Before the calls, Mr. Negrotto opened the shop and invited the CI and UCs inside to discuss drug sales. ROA.107–08.
    It is unclear whether Mr. Le sold the methamphetamine just to the CI or to the CI and UCs. For the first sale, Mr. Le would not sell the drugs to the UCs and asked them to leave. ROA.107. For the second sale, the UCs arrived with the payment money without the CI, but then they are not mentioned during the sale, and the CI, alone, handed over the funds and received the drugs. ROA.108–09.

(March 30, 2021 drug buy); ROA.108-09 (May 6, 2021 drug buy). The Factual Bases for the three co-defendants also frequently recounted Messrs. Negrotto, Martinez, and other persons (not Mr. Le) making numerous other drug sales from the motorcycle shop. *See supra* n.1 (noting the CI's frequent observation of Messrs. Negrotto and Martinez, as well as others doing drug deals at the shop); ROA.42 (charging March 2, 2021 drug sale at the shop involving Messrs. Negrotto and Martinez, only);[3] ROA.108 (stating that, on May 6, 2021, the UCs saw Mr. Negrotto, alone, "conduct[] multiple sales of methamphetamine to other individuals" at the shop over the course of several hours).[4] Another attempted sale at a different location (away from the shop) led to Mr. Negrotto's arrest. ROA.43 (charging June 25, 2021 possession with intent to distribute methamphetamine on Elysian Fields Avenue against Mr. Negrotto, only).[5]

---

[3] *See* Factual Basis of Brandon Martinez 2–3, ECF No. 129, 2:21-cr-00080 (E.D. La. Aug 17, 2023) (describing this sale by Messrs. Martinez and Negrotto); Factual Basis of Ryan Negrotto 3–4, ECF No. 121, 2:21-cr-00080 (E.D. La. July 7, 2023) (same).

[4] *Accord* Factual Basis of Ryan Negrotto 7, ECF No. 121, 2:21-cr-00080 (E.D. La. July 7, 2023); *cf.* Factual Basis of Brandon Martinez 5, ECF No. 129, 2:21-cr-00080 (E.D. La. Aug 17, 2023) (saying Mr. Martinez also was present for these drug sales).

[5] *See* Factual Basis of Ryan Negrotto 8–9, ECF No. 121, 2:21-cr-00080 (E.D. La. July 7, 2023) ("NEGROTTO arranged for the sale location to be in Orleans Parish [and] instructed the UCs to meet him at 2411 Elysian Fields Avenue, New Orleans,

On July 1, 2021, the Government charged Mr. Le with four counts of an eight-count indictment: Count One: conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; Count Three: the March 30, 2021 distribution of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 18 U.S.C. § 2; Count Four: the May 6, 2021 distribution of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 18 U.S.C. § 2; and Count Eight: using or maintaining a drug premises, the 5926 Alost Street motorcycle shop, for the purpose of manufacturing, distributing, or using methamphetamine in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2. ROA.11–14, RE.3.[6]

About five months later, the Government obtained a superseding indictment. ROA.41–48, RE.4. It picked up from Jefferson Parish and added Counts Nine through Eleven against Mr. Le for possession with intent to distribute and distribution of marijuana, and possession of a

---

Louisiana[,]" . . . [where] "Louisiana State Police officers took Negrotto into custody.").

While the UCs initially spoke to Mr. Le about handling this off-site sale, it does not appear that he ultimately participated in it, ROA.109–10, and Mr. Le was not charged with it. ROA.43 (charging only Mr. Negrotto with this count).

[6] The indictment also included a Notice of Forfeiture. ROA.14–16.

firearm in furtherance thereof, dating back to February 6, 2020. ROA.44–45[7] (citing 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D), and 18 U.S.C. § 924(c)(1)(A)(i)). These marijuana counts and the gun count are not at issue in this appeal.[8]

Without a plea agreement, Mr. Le pleaded guilty to all counts.[9] ROA.151–53, 165. The Probation Office then prepared a preliminary presentence investigation report ("PSR"), to which Mr. Le objected. ROA.180–205. Specifically, Mr. Le challenged the two-point enhancement under Sentencing Guideline § 2D1.1(b)(12), which states: "If the defendant *maintained* a premises for the purpose of manufacturing or distributing a controlled substance, increase by 2 levels." ROA.204–205 (emphasis added), RE.6; U.S. Sent'g Guidelines Manual § 2D1.1(b)(12) (U.S. Sent'g Comm'n 2011) [hereinafter U.S.S.G. § 2D1.1(b)(12)]. Mr. Le argued that he did not "maintain" the Alost Street

---

[7] While the Indictment states the year was 2021, *id.*, Mr. Le's Factual Basis says the year was 2020. ROA.110–16.

[8] Count Ten (the gun charge) required a consecutive, five-year mandatory minimum imprisonment term under 18 U.S.C. § 924(c)(1)(A)(i), (D)(ii). ROA.228.

[9] Because Mr. Le was found responsible for a total of 744.1 grams of methamphetamine, he was subject to a ten-year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A)(viii). ROA.228.

motorcycle shop and, thus, as to him, this enhancement did not apply. ROA.204–05.

The Government responded obscurely to Mr. Le's sentencing enhancement objection. Citing Mr. Le's Factual Basis, it stated: (i) "the defendant admitted that 5926 Alost Street *was in fact maintained* for the purpose of manufacturing or distributing a controlled substance;" and (ii) "the defendant plead[ed] guilty to Count 8 . . . to *maintaining/using* a drug premises." ROA.207 (emphasis added), RE.7. The Probation Office then rejected Mr. Le's challenge to the § 2D1.1(b)(12) enhancement because Mr. Le had pleaded guilty to Count Eight (using or maintaining a drug premises under § 856(a)(1)) and had stated in his Factual Basis that:

> [H]e and NEGROTTO did unlawfully and knowingly use and maintain a motorcycle shop located at 5926 Alost Street, New Orleans, Louisiana, 70126 for the purpose of distributing and using methamphetamine, as contained in Count 8 of the Superseding Indictment. *Between March 2, 2021, and June 25, 2021, LE and his co-conspirators, as described in the previous admissions, used the shop as a location where LE and his co-conspirators would knowingly partake in possession and distribution of methamphetamine*. Although the premises may have served other purposes, the distribution of methamphetamine was a significant reason why LE used the shop.

*Compare* ROA.110 (Mr. Le's Factual Basis) (emphasis added), *with* ROA.233 (Probation quoting everything except the factual explanation in the italicized, second sentence). The Probation Office did not analyze this Court's law or § 2D1.1(b)(12)'s relevant application note regarding what constitutes "maintaining" a drug premises for purposes of the enhancement. *See* ROA.233 (reviewing, instead, the application note regarding the separate, "for the purpose of", portion of § 2D1.1(b)(12)).

Before sentencing, Mr. Le also filed a Motion for Downward Departure and/or Variance from the Sentencing Guidelines. ROA.124–25 (motion), RE.8; ROA.126–32 (memorandum in support), RE.9. The memorandum highlighted that Mr. Le had no prior criminal history; the guns seized in relation to the possession with intent to distribute marijuana count were not in proximity to those drugs; he fully and voluntarily cooperated with the authorities; his parents abandoned him as a child; and, shortly after reuniting with his mother, he suffered her murder as a result of a drive-by shooting. ROA.128–130. In addition, Mr. Le raised the Sentencing Guidelines' disparity in punishment for methamphetamine (actual) versus methamphetamine (mixture), citing numerous cases that supported his argument that the disparity "creates

an arbitrary distinction . . . that runs contrary to the § 3553(a) factors."

ROA.130–31.

The district court overruled Mr. Le's objection to the sentencing enhancement based on the above-quoted language from Mr. Le's Factual Basis.[10] ROA.171–73. Like the Probation Office, the district court did not analyze this Court's law or apply § 2D1.1(b)(12)'s relevant application note regarding what constitutes "maintaining" a drug premises. ROA.171–73. The court then adopted the PSR's findings, which established a total offense level of 33, a criminal history of I, and an advisory Guidelines range of 135–168 before the additional, consecutive sixty (60) months for the gun charge. ROA.173. In response to Mr. Le's Motion for Downward Departure and/or Variance, however, the court stated that it was choosing "the lowest end of the guidelines," "the bottom of the guidelines." ROA.174–76. The court then imposed a 195-month sentence (the 135-month low of the Guidelines range plus the sixty (60) months for the gun charge). ROA.134–40, ROA.175–76. Mr. Le timely appealed. ROA.145.

---

[10] The Government did not present any testimony or evidence at Mr. Le's sentencing hearing. *See generally* ROA.171–78 (sentencing transcript).

## SUMMARY OF THE ARGUMENT

The district court improperly applied the § 2D1.1(b)(12) enhancement. Based on this Court's law and § 2D1.1(b)(12)'s relevant application note, the factual record does not support a finding that Mr. Le "maintained" the motorcycle shop located at 5926 Alost Street. Absent this two-point enhancement, Mr. Le faced a total offense level of 31, criminal history of I, and advisory Guidelines range of 108–135. When the "low end" (108 months) is added to the additional, consecutive sixty (60) months for the gun charge, Mr. Le's total offense level would have been 168 months, which likely would have prompted the district court to sentence Mr. Le to the mandatory minimum of 180 months (rather than 195 months) of imprisonment. The district court was clear that it wanted to use the "lowest end" and "bottom" of the guidelines. ROA.174–76.

Mr. Le's sentence additionally was compounded by the sentencing disparity between methamphetamine (actual) versus methamphetamine (mixture) and other serious drugs. The purity of methamphetamine no longer serves as a viable proxy for culpability; the severe treatment of methamphetamine (actual) lacks any empirical basis; and the methamphetamine Guidelines cause greatly disparate treatment of

methamphetamine (actual) defendants compared to similarly-situated defendants found guilty of other, similarly serious drug offenses (*e.g.,* fentanyl, cocaine, and heroin offenses). Mr. Le understands that some, or all, of his arguments on this issue may be foreclosed by Circuit precedent, in which case he offers his arguments for preservation purposes in the event the Sentencing Commission or Supreme Court remedies this sentencing disparity in the future.

## ARGUMENT

This Court reviews criminal sentences under a bifurcated approach, "[r]egardless of whether the sentence imposed is inside or outside the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007). First, the Court assesses whether the district court committed any "'significant procedural error[s],' such as improperly calculating the Guidelines range, treating the Guidelines as mandatory, or selecting a sentence based on erroneous factors." *United States v. Harris*, 702 F.3d 226, 229 (5th Cir. 2012) (per curiam) (quoting *Gall*, 553 U.S. at 51). "Second, assuming no procedural error occurred, the [C]ourt reviews for substantive reasonableness, taking into account the totality of the circumstances." *Id.* (quoted citation omitted).

## I. The District Court Failed to Properly Calculate and Consider Mr. Le's Sentencing Guidelines Range.

U.S.S.G. § 2D1.1(b)(12) provides a two-level enhancement if a defendant knowingly "*maintained* a premises *for the purpose of* manufacturing or distributing a controlled substance." U.S.S.G. §2D1.1(b)(12) & cmt. n.17. (Emphases added). Only the "maintain" element is at issue in this appeal. The Government had to show more than Mr. Le's act of drug distribution on the premises to prove that Mr. Le "maintained" the premises under § 2D1.1(b)(12). *See United States v. Lord*, 915 F.3d 1009, 1021–22 (5th Cir. 2019) (finding the defendant did not have sufficient access or control over premises to factually support "maintaining" it under U.S.S.G. § 2D1.1(b)(12)). If more than distribution were not required to establish "maintaining," then "the law would punish someone twice for the same act." *United States v. Whiteside*, 747 F. App'x 387, 394 (6th Cir. Aug. 29, 2018) (unpublished) (holding that more than distribution is required for "maintaining" and finding the factual evidence did not show the requisite control over the premises).

Here, the record was not scrutinized to determine whether Mr. Le "maintained" the motorcycle shop, as that term is legally defined. Nor does the record factually support that Mr. Le "maintained" the premises.

Thus, the district court erred in applying the enhancement and this Court should vacate Mr. Le's sentence and remand the case for resentencing without application of U.S.S.G. § 2D1.1(b)(12).

A.    *Standard of Review.*

Mr. Le may appeal his sentence if it "(1) was imposed in violation of law; (2) was imposed as a result of an incorrect application of the sentencing guidelines; or (3) is greater than the sentence specified in the applicable guideline range . . . ." 18 U.S.C. § 3742(a). This Court reviews the district court's "interpretation and application of the sentencing guidelines de novo and its findings of fact for clear error." *Lord*, 915 F.3d at 1017 (citation omitted). "'[I]f a review of the record results in a "definite and firm conviction that a mistake has been made,"'" then clear error has occurred. *United States v. Rome*, 207 F.3d 251, 253–54 (5th Cir. 2000) (per curiam) (citation omitted).

B.    *The Record Must Contain Sufficient Facts to Demonstrate that Each Element of the Enhancement Has Been Met.*

Mr. Le objected to the U.S.S.G. § 2D1.1(b)(12) enhancement. ROA.204–05. But neither the Government, nor Probation, nor the district court properly assessed whether the factual record legally supported that enhancement—and the Government bore "the burden of establishing the

factual predicate . . . ." *United States v. Aguilar-Alonzo*, 944 F.3d 544, 549 (5th Cir. 2019) (citations admitted). Instead, reliance was placed on Mr. Le's plea of guilty to Count Eight; a conclusory sentence contained in his Factual Basis for Count Eight; and § 2D1.1(b)(12)'s application note about the separate, "for the purpose of" element, which was not at issue for sentencing.

1. <u>21 U.S.C. § 856(a)(1) and U.S.S.G. § 2D1.1(b)(12) Do Not Perfectly Overlap</u>.

Mr. Le does not contest that he violated 21 U.S.C. § 856(a)(1), which makes it unlawful to "knowingly open, lease, rent, use, *or* maintain any place, whether permanently or temporarily, for the purpose of manufacturing, distributing, or using any controlled substance." (Emphasis added). But, violation of § 856 does not always trigger application of U.S.S.G. § 2D1.1(b)(12), which increases a defendant's base offense level only "[i]f the defendant *maintained* a premises for the purpose of manufacturing or distributing a controlled substance . . . ." (Emphasis added). Because the verb string of § 856(a)(1) transcends the singular verb of § 2D1.1(b)(12), the Government cannot simply rely on a § 856 conviction. Instead, as "[t]he proponent of [this] adjustment" to Mr. Le's base offense level, the Government had to produce "the factual

predicate" that Mr. Le actually *maintained* the motorcycle shop. *Aguilar-Alonzo*, 944 F.3d at 549. The Government failed to do so. *See, e.g., Whiteside*, 747 F. App'x at 393–94 (reversing district court's application of § 2D1.1(b)(12) where district court reasoned, "[A]lthough no one testified that Whiteside controlled the properties, 'the jury found that [he did] at the time that [he] sold drugs therefrom'") (quoting district court)).

2. <u>The Conclusory Sentence in Mr. Le's Factual Basis Does Not Establish the Factual Predicate for Finding He "Maintained" the Premises</u>.

The Government, Probation, and district court all relied on a single, conclusory sentence in Mr. Le's Factual Basis, which stated that "he and NEGROTTO did unlawfully and knowingly use and maintain a motorcycle shop located at 5926 Alost Street, New Orleans, Louisiana, 70126 for the purpose of distributing and using methamphetamine, as contained in Count 8 of the Superseding Indictment." ROA.207, 233, 172–73. As stated, Mr. Le does not challenge his conviction for Count Eight— he did "use" the motorcycle shop to distribute methamphetamine. But that does not prove that Mr. Le "maintained" the shop.

Nor does this single, conclusory sentence prove that Mr. Le factually "maintained" the motorcycle shop. On the factual record, *Mr. Negrotto* clearly did "maintain" the shop, but the record does not show that *Mr. Le* "maintained" it. Only by forcing the actors together (Messrs. Negrotto and Le) can the sentence include its two verbs (use and maintain) because, as to Mr. Le, alone, "maintain" cannot be substantiated. ROA.110. Even the Government's response obfuscated the actor, stating Le admitted the motorcycle shop "*was in fact maintained for the purpose of*" selling drugs, and that Le "plead[ed] guilty to Count 8 . . . to *maintaining/using* a drug premises."[11] ROA.207 (emphasis added). The Probation Office's recount does not fare much better. It described Mr. Le's "Offense Conduct" only in terms of "use," stating:

> Between March 2, 2021, and June 25, 2021, Le and his co-conspirators *used* the shop as a location where Le and his co-conspirators would knowingly partake in possession and distribution of methamphetamine. Although the premises may have served other purposes, the distribution of methamphetamine was a significant reason why Negrotto and Le *used* the shop.

---

[11] *See* Bryan A. Garner, *The Redbook: A Manual on Legal Style* § 1.80 (2d ed., West 2006) ("[The slash . . . is especially unfit for legal writing because it is inherently ambiguous: its function may be conjunctive <secretary/treasurer> or disjunctive <a buy/sell decision>."); *see also* William Strunk Jr. & E.B. White, *Elements of Style* 40 (4th ed., Oxford Univ. Press 1999) (noting that use of the slash, such as in "and/or," "often leads to confusion and ambiguity").

ROA. 191 (initial PSR ¶ 56), ROA.220 (final PSR ¶ 56) (emphases added).

Thus, neither the government nor Probation factually substantiated that

Mr. Le took any action to "maintain" the motorcycle shop.

Finally, and independently, in the plea context, this Court has held

that a factual basis must actually exist and bald or conclusory statements

about an element will not suffice. *See, e.g., United States v. Jones*, 969

F.3d 192, 196 (5th Cir. 2020) ("The record must contain factual

allegations indicating that the defendant committed each element of the

crime, rather than mere conclusory statements of the legal elements.").

This same rule applies to sentencing enhancements, for which the

Government "bears the burden of establishing the factual predicate 'by a

preponderance of the relevant and sufficiently reliable evidence.'"

*Aguilar-Alonzo*, 944 F.3d at 549 (citations admitted); *United States v.*

*Abrego*, 997 F.3d 309, 312 (5th Cir. 2021) ("'Bald, conclusionary

statements do not acquire the patina of reliability by mere inclusion in

the PSR, through the request of the prosecutor.'") (Quoting *Rome*, 207

F.3d at 254). Indeed, this Court has anchored the Government's burden

of proof at sentencing to principles of due process. *See Harris*, 702 F.3d

at 230 (the requirement of sufficient evidence "is consistent with the

constitutional due process requirement that 'sentencing facts must be established by a preponderance of the evidence''') (quoted citation omitted).

Thus, bald conclusions about an element "are insufficient standing alone to support [a sentencing] enhancement unless otherwise supported by the record." *Rome*, 207 F.3d at 254. Here, the record does not support that Mr. Le "maintained" the motorcycle shop premises. *Cf. United States v. Marek*, 238 F.3d 310, 314 (5th Cir. 2001) (en banc) ("That [the defendant] pleaded guilty—a legal conclusion on her part—ostensibly admitting to discrete facts supporting the charge against her, is not itself sufficient to support her guilty plea."); *United States v. Adams*, 961 F.2d 505, 508 (5th Cir. 1992) (per curiam) (finding that a factual basis which simply restates the elements of a crime does not suffice because "[t]he record must reveal specific factual allegations supporting each element . . . .").

3. <u>The Probation Office Did Not Apply the Correct Part of §
2D1.1(b)(12)'s Application Note</u>.

While a PSR "'bears sufficient indicia of reliability to be considered as evidence by the sentencing judge,'" a district court may only adopt the PSR's "facts" "'if those facts have an adequate evidentiary basis with

sufficient indicia of reliability.'" *Harris*, 702 F.3d at 230 (quoted citations omitted). "If the factual recitation lacks sufficient indicia of reliability, then it is error for the district court to consider it at sentencing—regardless of whether the defendant objects or offers rebuttal evidence." *Id.* at 231.

Here, Mr. Le challenges the application of the § 2D1.1(b)(12) enhancement, as a matter of law, because the PSR provided no factual evidence that he "maintained" the motorcycle shop, as that term is legally defined. *See infra* Pt. I(C). Two reasons exist for this legal error: first, the facts simply do not bear out that Mr. Le "maintained" the motorcycle shop; and, second, the Probation Office did not analyze the correct part of § 2D1.1(b)(12)'s application note to consider what constitutes "maintaining" a drug premises. Instead, Probation reviewed, and rested its decision on, the application note for the separate, "for the purpose of", element of § 2D1.1(b)(12)), stating:

> [H]e and NEGROTTO did unlawfully and knowingly use and maintain a motorcycle shop located at 5926 Alost Street, New Orleans, Louisiana, 70126 for the purpose of distributing and using methamphetamine, as contained in Count 8 of the Superseding Indictment. *Although the premises may have served other purposes, the distribution of methamphetamine was a significant reason why LE used the shop.*

ROA.233 (Emphasis added). *Compare id.* (focusing on the purpose for using the shop), *with* U.S.S.G. § 2D1.1(b)(12) cmt. n.17 (outlining separate factors governing the "maintained" element and the "for the purpose of" element). Indeed, in its response to Mr. Le's objection, the Probation Office omitted its explanation of *how* Mr. Le allegedly "maintained" the shop—namely, that "[b]etween March 2, 2021[] and June 25, 2021," he "*used* the shop" to engage in drug distribution. *See supra* p. 15 (quoting PSR explanation of Offense Conduct) (emphasis added). Under the law, more is required than simple "use" of the premises to prove that a defendant "maintained" the premises under U.S.S.G. § 2D1.1(b)(2).

C. *Under this Circuit's Precedent and the Correct Part of § 2D1.1(b)(12)'s Application Note, The Factual Record is Legally Insufficient to Establish that Mr. Le "Maintained" the Motorcycle Shop.*

While U.S.S.G. § 2D1.1(b)(12) does not define the term "maintain," Application Note 17 lists factors to guide this Court's analysis: "(A) whether the defendant held a possessory interest in (e.g., owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises." U.S.S.G. § 2D1.1(b)(12) cmt. n.17 (emphasis in original). In addition, this Court and other circuits have

used § 856 precedent for guidance in interpreting the meaning of "maintain." *See United States v. Guzman-Reyes*, 853 F.3d 260, 264 (5th Cir. 2017) (citing cases). Similar to § 2D1.1(b)(12)'s application note, that precedent lists whether the defendant "'(1) ha[d] an ownership or leasehold interest in the premises, (2) was in charge of the premises, or (3) exercised "supervisory control" over the premises.'" *Id.* at 264 (quoted citations omitted).

This Court has said that the above factors "are not necessarily determinative alone, but should be considered together." *Guzman-Reyes*, 853 F.3d at 264 (citation omitted). This Court also has counseled that "'not just any showing of dominion or control will suffice to support a maintenance finding . . . .'" *Id.* (quoted citation omitted). "Instead, the evidence should support 'that the defendant exercised "*sufficient* dominion and control" over' the premises, or else 'dominion and control may fall short of maintenance.'" *Id.* (emphasis in original) (quoted citations omitted).

 Here, the evidence falls far short of showing that Mr. Le "maintained" the Alost Street motorcycle shop. There is no evidence that Mr. Le owned the shop, rented the shop, lived or slept at the shop, stored

anything at the shop, exercised control over the shop, or had keys or the ability to access the shop, independently. Instead, after visiting to bring his motorcycle to the shop for repairs, Mr. Le sold drugs there twice—both times at Mr. Negrotto's invitation. ROA.107–08, 130, 204.

Mr. Negrotto "rented" the shop, but Mr. Le had no possessory interest. ROA.106, 204–05. *Cf. Guzman-Reyes*, 853 F.3d at 264–65 (noting, *inter alia*, that Guzman-Reyes paid the shop owner "$1,000-worth of methamphetamine per month . . . for use of the premises . . . [to] stor[e] his drug supply").

Mr. Negrotto "controlled the access to" the shop, not Mr. Le. *See* ROA.107 (March 30, 2021: the CI and UCs had to wait at the shop until Mr. Negrotto arrived to open it); ROA.108 (May 6, 2021: the UCs had to wait at the shop for Mr. Negrotto, who then arrived and opened it). Just as in *Lord*, where this Court reversed application of § 2D1.1(b)(12) as to one defendant, Mr. Le did not have a key to the premises and Mr. Le could not access the premises without his co-defendant's physical presence and permission. *Lord*, 915 F.3d at 2022. *Cf. Guzman-Reyes*, 853 F.3d at 264–65 (finding defendant had "unrestricted access to the premises" because, although he did not have a key, he gave drugs,

monthly, for rent, he stored his drugs at the premises, and he had the shop owner "on call" for unrestricted access to the premises).

Finally, Mr. Negrotto had "supervisory control" over the shop, but Mr. Le did not. Mr. Negrotto opened and, presumably, closed the shop daily. *Supra* pp. 21–22. The CI (who visited the shop numerous times) said he frequently saw Messrs. Negrotto and Martinez there and often saw them selling drugs.[12] The CI did not say the same things about Mr. Le. *See generally* ROA.104–10. (Le Factual Basis). Mr. Le was not involved in these multiple other sales by Messrs. Negrotto and Martinez to the CI, UCs, and others, *supra* n.12, and it is unclear whether Mr. Le even sold any drugs to the UCs. *Supra* n.2. Instead, Mr. Le went to the shop only on the few occasions that Mr. Negrotto invited him, and he only

---

[12] Factual Basis of Brandon Martinez 2, ECF No. 129, 2:21-cr-00080 (E.D. La. Aug. 17, 2023) ("The CI visited the shop numerous times and observed drug sales and heard drug sales being discussed. . . . The CI frequently observed MARTINEZ at the shop.); *accord* Factual Basis of Ryan Negrotto 3, ECF No. 121, 2:21-cr-00080 (E.D. La. July 7, 2023) (stating same thing).

Factual Basis of Ryan Negrotto 3–4, ECF No. 121, 2:21-cr-00080 (E.D. La. July 7, 2023) (stating Mr. Negrotto, with the help of Mr. Martinez, procured drugs and sold them to the CI at the shop on March 2, 2021); *accord* Factual Basis of Brandon Martinez 2–3, ECF No. 129, 2:21-cr-00080 (E.D. La. Aug 17, 2023);

Factual Basis of Ryan Negrotto 7, ECF No. 121, 2:21-cr-00080 (E.D. La. July 7, 2023) (stating Mr. Negrotto "conducted multiple sales of methamphetamine to other individuals" at the shop over the course of several hours on May 6, 2021); *accord* Factual Basis of Brandon Martinez 5, ECF No. 129, 2:21-cr-00080 (E.D. La. Aug 17, 2023) (stating Mr. Martinez was present during these Negrotto drug sales).

sold drugs there twice. ROA.107–08. On one occasion, Mr. Le even refused to sell to the UCs and asked them to leave, ROA.107, but this evidence does not establish that he "maintained" the premises. *Cf. United States v. Morgan*, 117 F.3d 849, 857–58 (5th Cir. 1997) (finding evidence "slim," but sufficient, for § 856 conviction where defendant called the premises "our spot," was seen lounging around the place and instructing others to go to a closet (not a common area) to collect drugs that he stored there, and his relative (who lived there) "worked for" him). Here, the factual record simply does not establish that Mr. Le "exercised "*sufficient* dominion and control" over' the premises" to substantiate maintenance. *Guzman-Reyes,* 853 F.3d at 264 (emphasis in original). "[N]ot just any showing of dominion or control" will do. *Id.*

Just like the defendant in *Lord*, Mr. Le had no possessory interest in the motorcycle shop and he lacked sufficient access and control over it to support the § 2D1.1(b)(12) enhancement. *Lord*, 915 F.3d at 1021–22 (finding no evidence that the defendant could even access the premises without his co-defendant's presence and permission). And, just like the defendant in *Whiteside*, Mr. Le engaged in drug distribution, but not maintenance of the premises. *Whiteside,* 747 F. App'x at 389–90, 394

(finding three drug sales by the defendant and several others failed to show the defendant exercised requisite control over the premises for the enhancement). The Government must show more than a defendant's "use" of the premises for drug distribution. *Id.* Otherwise, any distribution from a premises would trigger § 2D1.1(b)(12), and the words "use" and "maintain" would have no different meanings.[13]

U.S.S.G. § 2D1.1(b)(12), itself, requires more than mere "use"—it requires "maintain," and, legally, "maintain" demands some combination of a possessory interest, unrestricted access, and sufficient supervisory control over the premises. *See Guzman-Reyes*, 853 F.3d at 264 (noting these factors "should be considered together" and "not just any showing of dominion or control will suffice"). Had the Sentencing Commission wanted to apply § 2D1.1(b)(12) more broadly, it could have done so by including the term "use." The Sentencing Commission did not do so, and the enhancement's language must control. *See United States v. Stanford*,

---

[13] *Compare Morgan*, 117 F.3d at 857 n.7 (quoting Webster's Dictionary as defining "maintain" as "to keep in an existing state: preserve from failure or decline; to sustain against opposition or danger: uphold and defend; to continue or persevere in: carry on, keep up"), *with* Merriam-Webster.com Dictionary, Merriam-Webster, located at https://www.merriam-webster.com/dictionary/use (Accessed 24 Apr. 2024) (defining "use" as "to put into action or service: avail oneself of: employ; . . . to carry out a purpose or action by means of: utilize").

883 F.3d 500, 511 (5th Cir. 2018) ("If the language [of the Guideline] is unambiguous, and does not lead to an 'absurd result,' the court's inquiry begins and ends with the plain meaning of that language.") (quoted citation omitted).

In sum, the Government failed to produce evidence that Mr. Le "maintained" the Alost Street motorcycle shop. Absent § 2D1.1(b)(12)'s two-point enhancement, Mr. Le faced a lower advisory Guidelines range of 108–135 (before the gun charge's sixty (60) months). U.S. Sent'g Guidelines Manual ch. 5, pt. A (U.S. Sent'g Comm'n 2010) (Sentencing Table for Offense Level 31). The district court declared that it wanted to sentence Mr. Le to the "lowest end" and "bottom" of his guidelines range. ROA.174–76. Thus, this Court should vacate Mr. Le's sentence and remand his case for resentencing based on the proper Guidelines range and without application of U.S.S.G. § 2D1.1(b)(12).

## II. The District Court's Sentence was Substantively Unreasonable.

A court must make an individualized assessment based on the facts of each case when choosing a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" of § 3553(a). *Gall*, 552 U.S. at 50. Here, Mr. Le asked the district court to depart or vary downward

at sentencing based on his personal background and characteristics as well as the disparity in punishment for methamphetamine (actual) versus methamphetamine (mixture). ROA.124–32. In response, the district court articulated the 18 U.S.C. § 3553(a) factors and determined that it would sentence Mr. Le to "the lowest end of the guidelines," "the bottom of the guidelines." ROA.174–76. Mr. Le received a 195-month sentence (the 135-month low of the Guidelines range plus the sixty (60) months for the gun charge). ROA.175–76.

A.     *Standard of Review.*

By his motion, Mr. Le preserved his challenge to the substantive reasonableness of his sentence. *See Holguin-Hernandez v. United States*, 140 S. Ct. 762-766–77 (2020) (holding that a request for a lower sentence preserves the issue of a sentence's substantive reasonableness). Accordingly, this Court reviews this issue for abuse of discretion. *Id.*

B.     *The Sentencing Disparity Between Methamphetamine (Actual) and Methamphetamine (Mixture) as well as Other Drugs Results in Substantively Unreasonable Sentences.*

The Sentencing Guidelines establish a ten-to-one variance in punishment for methamphetamine (actual) and methamphetamine (mixture). *See* U.S.S.G. § 2D1.1(c) (Drug Quantity Table) (2018). For

example, in this case, Mr. Le, who has no criminal history, was held responsible for 744.1 grams of methamphetamine (actual) and 17,602.1 grams of marijuana. ROA.222. In converted drug weight ("CDW"), the methamphetamine (actual) equates to 14,882 kilograms and the marijuana equates to 17.43 kilograms, for a total of 14,899.43 kilograms. ROA.222. The PSR arrived at a base offense level of 34. ROA.222; *see* U.S. Sent'g Guidelines Manual § 2D1.1(c)(3) (U.S. Sent'g Comm'n 2018) (offense involving at least 10,000 kilograms but less than 30,000 kilograms of CDW). Even assuming, *arguendo*, the plus two points for maintaining a drug premises, and accepting the minus three points for acceptance of responsibility, Mr. Le's drug-based Guidelines range was 135–168 months. U.S. Sent'g Guidelines Manual ch. 5, pt. A (U.S. Sent'g Comm'n 2010) (Sentencing Table for Offense Level 33).

If, however, the 744.1 grams had been treated as methamphetamine (mixture), then its CDW would have been 1,488.2 kilograms which, when added with the marijuana, totals 1,505.63 kilograms and a base offense level of 30. *See* U.S. Sent'g Guidelines Manual § 2D1.1(c)(5) (U.S. Sent'g Comm'n 2018) (offense involving at least 1,000 kilograms but less than 3,000 kilograms of CDW). Again,

assuming, *arguendo,* the plus two points, and accepting, also, the minus three points, Mr. Le's drug-based Guidelines range would have been 87–108 months. U.S. Sent'g Guidelines Manual ch. 5, pt. A (U.S. Sent'g Comm'n 2010) (Sentencing Table for Offense Level 29). Several years of imprisonment separate the above, alternate calculations.[14]

"A growing body of case law suggests the distinction between actual methamphetamine and methamphetamine mixture is no longer appropriate because it is not based on empirical dat[a], does not serve as an accurate proxy for culpability, and creates unwarranted sentencing discrepancies between methamphetamine and other drugs." *United States v. Celestin*, No. 21-125, 2023 WL 2018004, at *2 (E.D. La. Feb. 15, 2023). Indeed, methamphetamine is one of the most harshly punished drugs under the Sentencing Guidelines. *Id.*, at *2 (reiterating that "'[n]o other drug is punished *more* severely based on purity'") (emphasis in original) (quoted citation omitted). In *Celestin*, the court explained:

> 500 grams of actual methamphetamine earns a base offense level of 34, while the same quantities of other drugs result in lower base offense levels: fentanyl (30), cocaine base (crack) (30), heroin (26), and cocaine (24). By contrast, the base

---

[14] But Mr. Le faced a ten-year mandatory minimum sentence either way. *See* 21 U.S.C. § 841(b)(1)(A) (imposing ten years for 50 grams or more of methamphetamine (actual) and 500 grams or more of methamphetamine (mixture)).

offense level for 500 grams of methamphetamine mixture is 30—a level more comparable to that advised for the same quantity of other major drugs.

*Id.*, at *4 (quoted citation omitted).

Neither empirical research nor data provide any support for this severe disparity in treatment. *See id.*, at *3 ("[N]ot only did the Commission not *rely* on empirical dat[a], but 'many courts have noted that no empirical data appears to justify the guidelines' 10:1 ratio.'") (Emphasis in original) (quoted citation omitted). And, purity of methamphetamine is no longer indicative of a person's role or position in a chain of distribution because practically all methamphetamine in the United States today is close to one hundred percent (100%) pure. *Id.*, at *4; *see* U.S. Dep't of Justice Drug Enf't Admin., *Drug Enforcement Administration 2020 National Drug Threat Assessment* 19–20 (Mar. 2021) (PDF) (reporting that DEA sampling of seized methamphetamine showed averages of "97.2 percent purity and 97.5 percent potency"), located at https://www.dea.gov/sites/default/files/2021-02/DIR-008-21%202020%20National%20Drug%20Threat%20Assessment_WEB.pdf.

In the Fall of 2023, the United States Sentencing Commission stated its intent to "reduc[e] costs of incarceration and overcapacity of

prisons." U.S. Sent'g Comm'n Final Priorities for Amendment Cycle, 88 Fed. Reg. 60536, 60537 (Sept. 1, 2023). Its priorities include examination of federal sentencing practices for methamphetamine trafficking offenses. *Id.* Because (i) "the connection between methamphetamine purity and criminal role is divorced from reality,"[15] (ii) the ten-to-one ratio lacks any empirical basis, and (iii) methamphetamine punishment in comparison to other drugs is so disparate, numerous courts around the country have rejected the methamphetamine Sentencing Guidelines based on policy disagreement.[16] *See Spears v. United States*, 555 U.S.

---

[15] *United States v. Johnson*, 379 F. Supp. 3d 1213, 1225 (M.D. Ala. 2019) (citation omitted).

[16] *See, e.g.*, *Celestin*, 2023 WL 2018004, at *2–5; *United States v. Havel*, No. 4:21-CR-3075, 2023 WL 1930686, at *4–6 (D. Neb. Feb. 10, 2023); *United States v. Robinson*, No. No. 3:21-CR-14-CWR-FKB-2, 2022 WL 17904534, at *3–4 (S.D. Miss. Dec. 23, 2022); *United States v. Carillo*, 440 F. Supp. 3d 1149, 1154–55 (E.D. Ca. 2020); *United States v. Moreno*, 583 F. Supp. 3d 739, 754 (W.D. Va. 2019); *Johnson*, 379 F. Supp. 3d at 1225–26; *United States v. Rodriguez*, 382 F. Supp. 3d 892, 897–98 (D. Ala. 2019); *United States v. Bean*, 371 F. Supp. 3d 46, 51–54 (D.N.H. 2019); *United States v. Pereda*, No. 18-cr-00228-CMA, 2019 WL 463027, at *4 (D. Colo. Feb. 6, 2019); *United States v. Requena*, No.4:18-cr-175-BLW, 2019 WL 177932, at *1 (D. Idaho Jan. 11, 2019); *United States v. Hoover*, No. 4:17-cr-327-BLW, 2018 WL 5924500, at *4–7 (D. Idaho Nov. 13, 2018); *United States v. Ferguson*, No. 17-204 (JRT/BRT), 2018 WL 3682509, at *3–4 (D. Minn. Aug. 2, 2018); *United States v. Nawanna*, 321 F. Supp. 3d 943, 951-955 (N.D. Iowa 2018); *United States v. Harry*, 313 F. Supp. 3d 969, 972–75 (N.D. Iowa 2018); *United States v. Ibarra-Sandoval*, 265 F. Supp. 3d 1249, 1253–57 (D.N.M. 2017); *United States v. Hartle*, No. 4:16-cr-00233-BLW, 2017 WL 2608221, at *1 (D. Idaho, June 15, 2017); *United States v. Jennings*, No. 4:16-cr-00048-BLW, 2017 WL 2609038, at *3–4 (D. Idaho June 15, 2017); *United States v. Hayes*, 948 F. Supp. 2d 1009, 1015 (N.D. Iowa 2013); *United States v. Ortega*, No. 09-400, 2010 WL 1994870, at *7 (D. Neb. May 17, 2010).

261, 265–66 (2009) (recognizing that courts may reject or vary from Guidelines based on policy disagreement).

Mr. Le urges this Court to hold that his sentence is substantively unreasonable because of the irrationality of the Guidelines governing methamphetamine offenses and the disparate treatment such defendants receive in comparison to defendants committing other, similarly serious drug offenses. *See supra* pp. 28–29 (noting far more severe treatment for methamphetamine (actual) in comparison to fentanyl, cocaine, and heroin); 18 U.S.C. § 3553(a) (establishing need "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct").

Mr. Le also recognizes, however, that this Court's precedent may foreclose some, or all, of the arguments made in this section. *See United States v. Lara*, 23 F.4th 459, 485–86 (5th Cir.) (affirming district court's rejection of defendant's argument that the methamphetamine Guidelines lack an empirical basis), *cert. denied*, 142 S. Ct. 2790 (2022). In that event, Mr. Le raises the above issues and arguments for preservation purposes, in the event the Sentencing Commission or Supreme Court remedies this sentencing disparity in the future. *See United States v.*

*Devaney*, No. 23-10385, 2024 WL 195555, at *1 (5th Cir. Jan. 18, 2024) (per curiam) (unpublished) (recognizing the same issue as being raised for preservation).

## CONCLUSION

For the foregoing reasons, this Court should find that the district court erred in applying § 2D1.1(b)(12) to Mr. Le's sentence, vacate his sentence, and remand his case for resentencing without application of § 2D1.1(b)(12). Additionally, if not foreclosed by circuit precedent, this Court should find that the district court imposed a substantively unreasonable sentence by applying the greatly disparate Sentencing Guidelines for methamphetamine (actual) and remand for resentencing on that ground as well.

RESPECTFULLY SUBMITTED:

/s/Deborah Ann Pearce
Law Offices of Deborah Pearce
141 Allen Toussaint Boulevard
New Orleans, LA 70124-0000
(512) 809-6269 (telephone)
(504) 324-0882 (facsimile)
federalappeals@cox.net

*CJA-Appointed Counsel for Nghia Le*

# CERTIFICATE OF SERVICE

I certify that on May 1, 2024, I electronically filed the foregoing brief with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to opposing counsel at the U.S. Attorney's Office, Eastern District of Louisiana, Suite 210-B, 500 Poydras Street, Hale Boggs Federal Building, New Orleans, LA 70130.

I further certify the foregoing document meets the required privacy redactions; it is an exact copy of the paper document; and, the document has been scanned and is virus free.

Finally, I certify that a paper copy of the brief was sent via first class mail, postage prepaid, to:

<div align="center">

NGHIA LE
INMATE NUMBER 54329-509
FCI Yazoo City Medium
Federal Correctional Institution
P.O. Box 5000
Yazoo City, MS 39194

</div>

Counsel has communicated about the substance of this brief with Nghia Le, who speaks and understands English.

/s/Deborah Ann Pearce

**CERTIFICATE OF COMPLIANCE**

1. This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1, this document contains <u>6,924</u> words.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document was prepared in a proportionally spaced typeface using Century Schoolbook typeface in 14-point font size.

<u>/s/Deborah Ann Pearce</u>