No. 23-30888

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States of America,

*Plaintiff – Appellee,*

v.

Nghia Le,

*Defendant – Appellant,*

**On Appeal from**
United States District Court for the Eastern District of Louisiana
2:21-CR-80-3

**REPLY BRIEF OF APPELLANT NGHIA LE**

RESPECTFULLY SUBMITTED BY:

/s/Deborah Ann Pearce
Law Offices of Deborah Pearce
141 Allen Toussaint Boulevard
New Orleans, LA 70124-0000
(512) 809-6269 (telephone)
(504) 324-0882 (facsimile)
federalappeals@cox.net

*CJA-Appointed Counsel for Nghia Le*

# CERTIFICATE OF INTERESTED PERSONS
*United States v. Nghia Le*
No. 23-30888

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Cɪʀ Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
| --- | --- |
| United States of America | Diane Copes of U.S. Attorney's Office New Orleans, LA |
| United States of America | Kevin Boitmann of U.S. Attorney's Office New Orleans, LA |
| United States of America | Michael Trummel of U.S. Attorney's Office New Orleans, LA |

| Appellants: | Counsel for Appellants: |
| --- | --- |
| Nghia Le | Deborah Pearce of Law Offices of Deborah Pearce New Orleans, LA |
| Nghia Le | Claude J. Kelly of Federal Public Defender's Office New Orleans, LA |
| Nghia Le | Deborah Majeeda Snead of D. Majeeda Snead Attorney at Law New Orleans, LA |

| Other Interested Parties: | Counsel for Interested Parties: |
| --- | --- |
| Ryan Negrotto (co-defendant) | Celia Clary Rhoads of Federal Public Defender's Office New Orleans, LA |
| Ryan Negrotto (co-defendant) | Claude J. Kelly of Federal Public Defender's Office New Orleans, LA |
| Ryan Negrotto (co-defendant) | Frank G. DeSalvo of Frank G. DeSalvo, APLC of New Orleans, LA |
| Ryan Negrotto (co-defendant) | Warner Bartlett Thompson of Federal Public Defender's Office New Orleans, LA |
| Brandon Martinez (co-defendant) | Brian J. Capitelli of Capitelli & Wicker New Orleans, LA |
| Brandon Martinez (co-defendant) | Claude J. Kelly of Federal Public Defender's Office New Orleans, LA |
| Brandon Martinez (co-defendant) | Tyffani A. Lauve of Mouledoux, Bland, Legrand & Brackett LLC New Orleans, LA |

/s/Deborah Ann Pearce
*CJA Counsel for Nghia Le*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS . . . . . . . . . . . . . . . . . . . . ii

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

ARGUMENT AND AUTHORITIES IN REPLY. . . . . . . . . . . . . . . . . . 1

I.   The District Court Misapplied the U.S.S.G. § 2D1.1(b)(12)
     Sentencing Enhancement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     A.   *Reliance on Alleged Admissions* . . . . . . . . . . . . . . . . . . . . . 3

     B.   *Failure to Analyze Legal Requirements*. . . . . . . . . . . . . . . .8

     C.   *Legally Insufficient Evidence of "Maintaining" Mr.
          Negrotto's Motorcycle Shop* . . . . . . . . . . . . . . . . . . . . . . . 10

II.  This Court Should Reject the Government's New Arguments
     Raised for the First Time on Appeal . . . . . . . . . . . . . . . . . . . . . 17

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . . .24

# TABLE OF AUTHORITIES

**Cases**                                              **Pages**

*Gall v. United States,*
    552 U.S. 38 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Adams,*
    961 F.2d 505 (5th Cir. 1992) (per curiam) . . . . . . . . . . . . . . . . . . 7

*United States v. Aguilar-Alonzo,*
    944 F.3d 544 (5th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . .8–9

*United States v. Baltazar,*
    831 F. App'x 682 (5th Cir. 2020) (per curiam) . . . . . . . . . . . . . .6–7

*United States v. Evans,*
    826 F.3d 934 (7th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

*United States v. Guzman-Reyes,*
    853 F.3d 260 (5th Cir. 2017) . . . . . . . . . . . . . . . . . . 11, 12, 13, 15, 20

*United States v. Hankton,*
    875 F.3d 786 (5th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

*United States v. Harris,*
    702 F.3d 226 (5th Cir. 2012) (per curiam). . . . . . . . . . . . . . . . . 3, 10

*United States v. Hoang,*
    636 F.3d 677 (5th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

*United States v. Hopper,*
    934 F.3d 740 (7th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . 19–20

*United States v. Jackson,*
    27 F.4th 1088 (5th Cir. 2022) . . . . . . . . . . . . . . . . . . . .18, 19, 20–21

*United States v. Johnson,*
    956 F.3d 740 (5th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

*United States v. Jones,*
    969 F.3d 192 (5th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Lawrence,*
    920 F.3d 331 (5th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Lord,*
    915 F.3d 1009 (5th Cir. 2019) . . . . . . . . . . . . . . 9, 10–11, 13, 15, 20

*United States v. Marek,*
    238 F.3d 310 (5th Cir. 2001) (en banc) . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Moreno,*
    No. 21-50478, 2022 WL 2387356 (5th Cir. July 1, 2022) . . . . . . . 19

*United States v. Morales-Ortuno,*
    879 F. Supp. 2d 608 (E.D. Tex. 2012) . . . . . . . . . . . . . . . . . . . . .14–15

*United States v. Morgan,*
    117 F.3d 849 (5th Cir. 1997) . . . . . . . . . . . . 9, 10, 11–12, 14, 15, 16

*United States v. Rodney,*
    532 F. App'x 465 (5th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Rome,*
    207 F.3d 251 (5th Cir. 2000) (per curiam) . . . . . . . . . . . . . . . . . . . 4

*United States v. Smallwood,*
    920 F.2d 1231 (5th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

*United States v. Solis,*
    299 F.3d 420 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18–19

*United States v. Stanford,*
    883 F.3d 500 (5th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

*United States v. Whiteside,*
    747 F. App'x 387 (6th Cir. 2018) (unpublished) . . . . . . . 9–10, 11, 16

## Constitution, Statutes and Rules        Pages

U.S. CONST. amend. V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 20–21

21 U.S.C. § 856(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Fed. R. Crim. Pro. 32. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 20–21

## Sentencing Guidelines and Application Notes     Pages

U.S. Sent'g Guidelines Manual § 2D1.1(b)(7)
    (U.S. Sent'g Comm'n 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

U.S. Sent'g Guidelines Manual § 2D1.1(b)(12)
    (U.S. Sent'g Comm'n 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

U.S. Sent'g Guidelines Manual §2D1.1(b)(12) cmt. n.17
    (U.S. Sent'g Comm'n 2012). . . . . . . . . . . . . . . . . . . . . 5, 11, 12, 13, 20

## Other Sources                        Pages

Briefing Complete Notice,
    ECF No. 63, No. 21-50478 (5th Cir. April 5, 2022) . . . . . . . . . . . . .19

Factual Basis of Brandon Martinez,
    ECF No. 129, 2:21-cr-00080 (E.D. La. Aug. 17, 2023) . . . . . . . 16, 17

Factual Basis of Ryan Negrotto,
    ECF No. 121, 2:21-cr-00080 (E.D. La. July 7, 2023). . . . . . . . 15, 17

## ARGUMENT AND AUTHORITIES IN REPLY

Appellant, Nghia Le ("Le"), respectfully submits this Reply Brief, which focuses solely on whether the district court properly interpreted and applied U.S.S.G. § 2D1.1(b)(12).[1] This Court should reject the government's arguments on appeal. Sentencing Guideline § 2D1.1(b)(12) applies "[i]f *the defendant maintained* a premises for the purpose of manufacturing or distributing a controlled substance . . . ." U.S. Sent'g Guidelines Manual § 2D1.1(b)(12) (U.S. Sent'g Comm'n 2011) (emphasis added) [hereinafter U.S.S.G. § 2D1.1(b)(12)]. The district court applied this enhancement to Mr. Le's sentence but failed to analyze the legal requirements and application note for the "maintain" element. ROA.173. Instead, it focused on the "for the purposes of" element, which subscribes to different legal requirements. The court therefore misinterpreted and misapplied the enhancement.

---

[1] Mr. Le also raised as a second issue: whether the Sentencing Guidelines disparity between methamphetamine (actual) and methamphetamine (mixture) as well as other drugs resulted in a substantively unreasonable sentence. *See* Brief of Appellant at 25–32. Mr. Le stands on his opening brief, recognizing that his arguments are likely foreclosed by circuit precedent and presented for preservation purposes. *See* Brief of Appellant at 25–32.

The government disagrees and asks this Court to affirm the enhancement's application on a purely factual basis. It first asserts that Mr. Le admitted that he maintained Ryan Negrotto's ("Negrotto") motorcycle shop and did, in fact, maintain Mr. Negrotto's shop. But an alleged admission, alone, cannot supply the evidentiary support for an enhancement. And, here, the lack of evidentiary support reflects the district court's failure to apply the law governing "maintain," in the first place.

Alternatively, the government invites this Court to resolve the issue based on two new theories it raises for the first time on appeal. However, the government waived these arguments by failing to present them in the district court, where the government bore the burden of proof. This Court does not affirm judgments on alternative bases that were not presented in court below. Allowing the government to raise new arguments for the first time on appeal also violates Mr. Le's rights under Federal Rule of Criminal Procedure 32 and due process.

Because the district misapplied § 2D1.1(b)(12) and the record lacks a sufficient evidentiary basis for applying the enhancement, this Court

should vacate Mr. Le's sentence and remand the case for resentencing without application of the § 2D1.1(b)(12) enhancement.

## I. The District Court Misapplied the U.S.S.G. § 2D1.1(b)(12) Sentencing Enhancement.

"'[S]ignificant procedural error[s]'" include, *inter alia*, "improperly calculating the Guidelines range" and "selecting a sentence based on erroneous factors." *United States v. Harris*, 702 F.3d 226, 229 (5th Cir. 2012) (per curiam) (quoting *Gall v. United States*, 553 U.S. 38, 51 (2007)). Here, the district court erred in two ways: (1) it wrongly relied an alleged "admission" of "maintenance" when this Court has been clear that a bald admission does not supply the necessary factual evidence for guilty pleas or sentencing enhancements; and (2) it failed to analyze this Court's law or § 2D1.1(b)(12)'s relevant application note regarding what legally constitutes "maintenance" for purposes of the enhancement. As a result of these errors (and the actual facts), the record does not substantiate that Mr. Le "maintained" Mr. Negrotto's motorcycle shop under § 2D1.1(b)(12).

### A. *Reliance on Alleged Admissions*

This Court has been clear, in both the plea and sentencing enhancement contexts, that a defendant's bald, conclusionary admission

to a legal element will not shore up a factually-deficient record. *See United States v. Jones*, 969 F.3d 192, 196 (5th Cir. 2020) ("The record must contain factual allegations indicating that the defendant committed each element of the crime, rather than mere conclusory statements of the legal elements."); *United States v. Rome*, 207 F.3d 251, 254 (5th Cir. 2000) (per curiam) (holding bald conclusions about an element "are insufficient standing alone to support the enhancement").

Mr. Le's opening brief addresses the fallacy that he admitted that he "maintained" Mr. Negrotto's motorcycle shop, as that term is legally defined. *See* Brief of Appellant at 13–17. In the district court, everyone— the Probation Office, the government, and the district court—relied on the alleged admission in Mr. Le's Factual Basis that:

> [H]e and NEGROTTO did unlawfully and knowingly use and maintain a motorcycle shop located at 5926 Alost Street, New Orleans, Louisiana, 70126 for the purpose of distributing and using methamphetamine, as contained in Count 8 of the Superseding Indictment. *Between March 2, 2021, and June 25, 2021, LE and his co-conspirators, as described in the previous admissions, used the shop as a location where LE and his co-conspirators would knowingly partake in possession and distribution of methamphetamine*. Although the premises may have served other purposes, the distribution of methamphetamine was a significant reason why LE used the shop.

*Compare* ROA.110 (Factual Basis) (emphasis added), *with* ROA.207 (government response to objection quoting Factual Basis and arguing (i) "the defendant admitted that 5926 Alost Street was in fact maintained for the purpose of manufacturing or distributing a controlled substance;" and (ii) "the defendant plead[ed] guilty to Count 8 . . . to maintaining/using a drug premises"), *and* ROA.233 (Probation quoting Factual Basis except for the italicized factual explanation that Le "*used* the shop" for "distribution of methamphetamine") (emphasis added), *and* ROA.173 (district court quoting Factual Basis except for the italicized factual explanation that Le "*used* the shop" for "distribution of methamphetamine") (emphasis added).

Notably, all of the above renditions rely on Mr. Le's "use" of the shop (without addressing whether he "maintained" it). *See id.* Even in describing Mr. Le's "Offense Conduct," the PSR recited only his "use." ROA.220 (stating that between March 2, 2021 and June 25, 2021, Le "used the shop" to distribute methamphetamine, and then appending that this "use" of the shop need not be the shop's sole "purpose"). Section 2D1.1(b)(12) is not satisfied by "use;" it requires that "the defendant maintained" the premises. U.S.S.G. § 2D1.1(b)(12) & cmt. n.17.

The government now raises a new, similarly flawed argument tethered to the plea colloquy. It states that, during the plea colloquy, the district court, one time, used only the word "maintain" in describing the § 856 elements. *See* Brief of Appellee at 9. But the re-arraignment transcript is not as clear as the government would have this Court believe. The government does not mention that, two other times during the plea colloquy, the court described the offense to Mr. Le as "using or maintaining a drug premises." ROA.152, lines 23–25; ROA.159, lines 6–8. Further, the government overlooks that, in the one instance where the court used only "maintain," the court described it using only the "for the purpose of" commentary and omitted the "maintain" commentary. *See* Brief of Appellee at 9 (quoting the court's statement). This Court has found plain error in the sentencing context under similarly confusing circumstances. *See United States v. Baltazar*, 831 F. App'x 682, 683 (5th Cir. 2020) (per curiam) (finding that defendant's guilty plea to drug offense described only as "actual methamphetamine" distribution "did not provide an adequate evidentiary basis" for PSR's use of actual methamphetamine Guideline). Here, as occurred in *Baltazar*, the

defendant pleading guilty "was not admonished of the meaning or significance of the term . . . before he entered the plea." *Id.*[2]

Finally, and coming full circle, the government's reliance on the plea colloquy ultimately fails because bald "admissions" are insufficient. As this Court held *en banc*, in *United States v. Marek*, "That [the defendant] pleaded guilty—a legal conclusion on her part—ostensibly admitting to discrete facts supporting the charge against her, is not itself sufficient to support her guilty plea." 238 F.3d 310, 314 (5th Cir. 2001) (en banc). This rule has been circuit law for decades. *See, e.g., United States v. Adams*, 961 F.2d 505, 508 (5th Cir. 1992) (per curiam) (finding that a factual basis which simply restates the elements of a crime does not suffice because "[t]he record must reveal specific factual allegations supporting each element . . . .").[3] Thus, a finding that Mr. Le "maintained" Mr. Negrotto's motorcycle shop cannot be based on an alleged admission, alone. *Cf. supra* pp. 4–5 (recounting Probation's and

---

[2] The court also did not instruct Mr. Le on the law of aiding and abetting at re-arraignment. *See generally* ROA.151–69. Nor has the government argued that this ground supports the enhancement. *See generally* Brief of Appellee.

[3] The government relies on *United States v. Lawrence*, 920 F.3d 331, 338 (5th Cir. 2019). *See* Brief of Appellee at 10. But, there, the Court found other, additional evidence to support the enhancement and did not rest its holding solely on a conclusionary admission. *Id.* at 337–39.

the court's reliance on alleged admission, which, even then, is defined in terms of "using" the shop).

## B.    *Failure to Analyze Legal Requirements*

The true crux of the problem is that neither the Probation Office nor the district court analyzed the law pertaining to the term "maintain." As a result, the "factual findings"—which are based on "use," rather than the requirements for "maintain"—do not present an adequate evidentiary basis for § 2D1.1(b)(12)'s enhancement. Mr. Le's opening brief addresses Probation's and the court's legal error in applying only the separate and different application note for § 2D1.1(b)(12)'s "for the purpose of" prong. *See* Brief of Appellant at 17–18. Even in response to Mr. Le's PSR objection, Probation continued to focus on his "use" of the shop. *See supra* pp. 4–5 (quoting the finding).

On appeal, the government attempts to conflate the "for the purpose of" element with the "maintain" element. *See* Brief of Appellee at 7 & n.2. But this tact cannot camouflage that the Probation Office and district court applied the wrong factors and that the government failed to carry its burden of proof. *United States v. Aguilar-Alonzo*, 944 F.3d

544, 549 (5th Cir. 2019) (noting the government bears the burden of proof for a sentencing enhancement).

The government's position is also legally flawed. The government cannot render the "maintain" element superfluous by merging it with the "for the purpose of" element. *See United States v. Morgan*, 11 F.3d 849, 855 & n.5 (5th Cir. 1997) (noting that the elements are separate and this Court analyzes them separately). Conflating the elements would retool the enhancement's language to require only that "the defendant knowingly *used* a premises . . . for the purpose of manufacturing or distributing a controlled substance.'" As explained in Mr. Le's opening brief, this position runs counter to the Guideline's plain language and its relevant application note. *See* Brief for Appellant at 24–25 & n.13; *see also United States v. Lord*, 915 F.3d 1009, 1021–22 (5th Cir. 2019) (finding that, despite premises use for co-conspirators' drug distribution, one defendant did not have sufficient access or control over the premises to factually support "maintaining"); *United States v. Whiteside*, 747 F. App'x 387, 394 (6th Cir. Aug. 29, 2018) (unpublished) (holding that more than use for drug distribution is required for "maintaining," and finding

that the factual evidence failed to show the requisite degree of control over the premises).

In sum, the two elements of § 2D1.1(b)(12) are distinct and their analyses are different. *Id.* Here, the analysis conducted was wrong, the government presented no additional evidence, and the district court erred in adopting a PSR enhancement recommendation that lacked an adequate evidentiary basis. *Harris*, 702 F.2d at 230–31.

## C. Legally Insufficient Evidence of "Maintaining" Mr. Negrotto's Motorcycle Shop

Section 2D1.1(b)(12), its relevant commentary, and the governing caselaw require "*the defendant*" to have "*maintained* the *premises*." "Maintain" denotes something more than "constructive possession of the premises" or "use of the premises to distribute drugs." *Morgan,* 11 F.3d at 856 (refusing to "equat[e] possession with maintenance"); *Whiteside*, 747 F. App'x at 394 ("'[T]he government must show something more than the act of distribution from the premises to prove control under this standard.'") (quoted citation omitted)). And the focus must be on control of "*the premises*," not control over something else, such as the machinery or chemicals used to make the drugs there or the drugs used for distribution there. *Lord,* 915 F.3d at 1021–22 (finding that one

co-conspirator's acquisition of a pill press and raw drug materials did not show he "maintained" the *premises* in which these items were placed); *Whiteside*, 747 F. App'x at 394, (holding one defendant did not exercise "the necessary control" over the *premises* and was only one of "several people" that *utilized* the premises for drug distributions).

"Maintaining the premises" requires such things as a possessory ownership or leasehold, or a sufficient degree of supervisory dominion and control over the premises. U.S.S.G. § 2D1.1(b)(12) cmt. n.17; *United States v. Guzman-Reyes*, 853 F.3d 260, 264 (5th Cir. 2017). This Court has used care in applying the "maintaining the premises" element of § 2D1.1(b)(12) so as not to broaden the rule as stated by the Sentencing Commission. *Cf. Morgan*, 117 F.3d at 856 (noting that Congress [or, here, the Sentencing Commission] chooses the verb action that satisfies the rule and courts should not import additional actions and, thereby, broaden the rule as drafted). For the enhancement, "'not just any showing of dominion or control will suffice to support a maintenance finding . . . .'" *Id.* (quoted citation omitted). "Instead, the evidence should support 'that the defendant exercised "*sufficient* dominion and control" over' the

premises, or else 'dominion and control may fall short of maintenance.'" *Id.* (emphasis in original) (quoted citations omitted).

On appeal, the parties agree on the governing legal factors. *Compare* Brief of Appellant at 19–20 (stating factors), *with* Brief of Appellee at 7 (same). They also agree that Mr. Le had no possessory interest in the motorcycle shop. *Compare* Brief of Appellant at 20–21 (stating Mr. Le did not own, rent, live or sleep at, or store anything at the shop), *with* Brief of Appellee at 10 (admitting that Mr. "Le did not have an individual possessory interest in the shop"). While lack of a possessory interest does not automatically negate the "maintain" element, it is still one of the legal factors to consider. *Guzman-Reyes*, 853 F.3d at 264. Here, the parties agree that it weighs against finding that Mr. Le "maintained" the motorcycle premises. *See id.* (stating that all factors "should be considered together").

The government asks this Court to disregard another legal factor, namely, that Mr. Le did not have unrestricted access to Mr. Negrotto's motorcycle shop. *See* Brief of Appellee at 11; *but see* U.S.S.G. § 2D1.1(b)(12) cmt. n.17 (listing control over access to the premises as a legal factor). Again, this is a legal factor that courts must consider.

*Guzman-Reyes*, 853 F.3d at 264. This Court has found this factor to be highly relevant to "maintenance of the premises." *See id.* at 264–65 (finding "unrestricted access to the premises" because, although defendant did not have a key, he paid the shop owner "$1,000-worth of methamphetamine per month . . . for use of the premises . . . [to] stor[e] his drug supply" and had the shop owner "on call" so he could come and go as he pleased);[4] *accord United States v. Rodney*, 532 F. App'x 465, 472–73 (5th Cir. 2013) (upholding enhancement, even though defendant did not own or rent shed he used for drug distributions, because defendant had "unimpeded access" and "used it as he wished"). And, in *Lord*, this Court reversed application of § 2D1.1(b)(12) because—like Mr. Le—Michael Lord had neither (i) a possessory interest in the premises, nor (ii) unrestricted access to the premises. *Lord*, 915 F.3d at 1021–22 (finding that Lord could not access the premises without his co-conspirator's physical presence and permission); *see* U.S.S.G. § 2D1.1(b)(12) cmt. n.17 (establishing these two factors); *see also* Brief of Appellant at 21–22, 23 (highlighting that this record lacks evidence that

---

[4] The government omits that Guzman-Reyes effectively was renting and had free-rein over the premises by having the owner "on call." *See* Brief of Appellee at 11.

Mr. Le had either a possessory interest or control over access to the premises without Mr. Negrotto's physical presence and permission).

Next, the government "paint[s] with a broader brush than the evidence" permits. *Morgan*, 11 F.3d at 855. It states that Mr. "Le acted entrepreneurially, proactively, conducting his business his way at the shop," "negotiating" numerous drug sales there. Brief of Appellee at 2–3, 10. But the record does not support the government's picture. It shows that Mr. Le made two sales at the shop, both at Mr. Negrotto's invitation, and both after Mr. Negrotto had already negotiated the drug amount and price.[5] Mr. Le did not randomly come and go as he pleased, into and out of the shop. Although on a single occasion, outside the shop, a UC discussed a potential *off-site* sale with Mr. Le, Mr. Le did not continue with that sale and was not charged with that sale. ROA.109–10, 43; *See United States v. Morales-Ortuno*, 879 F. Supp. 2d 608, 609–10 (E.D. Tex.

---

[5] "Prior to the March 30, 2021" sale, "NEGROTTO provided . . . the CI with prices." ROA.106. The CI requested 315 grams and "NEGROTTO agreed he could provide" it. ROA.106. "NEGROTTO [then] contacted LE" to invite him to sell about 300 grams. ROA.107.

On April 25, 2021, "the CI texted NEGROTTO" to buy "a pound of methamphetamine." ROA.108. "NEGROTTO contacted LE" to invite him to provide it. ROA.108. On May 3, 2021, "a UC made contact with NEGROTTO" to verify "the pound of methamphetamine" and, the same day, "the CI texted with NEGROTTO" to "confirm[]" the "$7,000" sale price. ROA.108.

2012) (rejecting § 2D1.1(b)(12) enhancement where, *inter alia*, although defendant participated in previous controlled buys with co-conspirators at a different location, he did not participate in later controlled buys at another location). Mr. Negrotto attempted to execute that deal alone and was charged with that crime alone.[6] ROA.43. Finally, despite Mr. Negrotto's negotiation of a prior sale to the UCs and request that Mr. Le sell to them, Mr. Le refused and asked them to leave. ROA.107. That one act is insufficient to prove that Mr. Le maintained the premises for drug distribution. *See Lord,* 915 F.3d at 1021 (finding that defendant's direction to co-conspirator to move the drug manufacturing location did not prove he "maintained" the premises). "Not just any showing of dominion or control will suffice to support a maintenance finding . . . .'" *Guzman-Reyes*, 853 F.3d at 264 (quoting *Morgan*, 117 F.3d at 856).

Instead, "maintenance" requires evidence "'that the defendant exercised "*sufficient* dominion and control" over' the premises . . . .'" *Id.* (emphasis in original) (quoted citation omitted). This record does not

---

[6] "On June 25, 2021, the UCs "contact[ed]" NEGROTTO and "NEGROTTO arranged for the sale . . . in Orleans Parish. NEGROTTO instructed the UCs to meet him at 2411 Elysian Fields Avenue," which is the Mardi Gras Truck Stop that also was involved in NEGROTTO's March 2, 2021 drug sale (which did not involve Le). Factual Basis of Ryan Negrotto 8, 4, ECF No. 121, 2:21-cr-00080 (E.D. La. July 7, 2023).

even show that Mr. Le """"exercised supervisory, managerial, or entrepreneurial"""" control over the two drug *distributions* he engaged in, let alone over the shop *premises*. *But cf.* Brief of Appellee at 11 (inflating Mr. Le's role). Mr. Negrotto coordinated and controlled his shop premises. He invited the CI and UCs into his shop and negotiated the deals. *See supra* n.5. During the deals, Mr. Negrotto controlled the drugs, weighing them and delivering the right weight to the CI. ROA.109. Mr. Negrotto also controlled the money, "instruct[ing] LE to get MARTINEZ so MARTINEZ could count the money."[7] Mr. Le engaged in distribution, only. *See Whiteside*, 747 F. App'x at 389–90, 394 (finding three drug distributions by defendant and several others was insufficient to substantiate his "maintenance" of the premises). This case simply is not like *Morgan*, which the government cites in support, and where the defendant called the premises "our spot," was frequently seen lounging around the place and instructing others to go to a closet (an uncommon area) to collect drugs he stored there, and with his relative (who lived there) "work[ing] for" him. *Morgan*, 117 F.3d at 857. Mr. Le was not

---

[7] Factual Basis of Brandon Martinez 5, ECF No. 129, 2:21-cr-00080 (E.D. La. Aug 17, 2023). Mr. Le's Factual Basis omits this quoted statement. *See* ROA.109 (stating, instead, that Messrs. Le and Negrotto "gathered in a room" where the CI's handed over the money and received the drugs from Mr. Negrotto).

frequently seen at Mr. Negrotto's motorcycle shop.[8] Mr. Negrotto's drug

dealing occurred before he met Mr. Le,[9] thereafter continued without Mr.

Le,[10] and was in the process of continuing without Mr. Le on the date of

Mr. Negrotto's arrest.[11]

## II. This Court Should Reject the Government's New Arguments Raised for the First Time on Appeal.

Mr. Le argued in the court below (and argues here) that he did not

"maintain" Mr. Negrotto's motorcycle shop, as "maintain" is legally

---

[8] "The CI visited the shop numerous times and observed drug sales and heard drug sales being discussed. . . . The CI frequently observed MARTINEZ at the shop" and "discovered that co-conspirator NEGROTTO" rented the shop. Factual Basis of Brandon Martinez 2, ECF No. 129, 2:21-cr-00080 (E.D. La. Aug. 17, 2023); Factual Basis of Ryan Negrotto 3, ECF No. 121, 2:21-cr-00080 (E.D. La. July 7, 2023). The CI *did not* say the same things about Mr. Le. *See generally* ROA.104–110.

[9] On March 2, 2021, Mr. Negrotto, with the help of Mr. Martinez, procured the drugs and sold them to the CI at the shop. Factual Basis of Ryan Negrotto 3–4, ECF No. 121, 2:21-cr-00080 (E.D. La. July 7, 2023); Factual Basis of Brandon Martinez 2–3, ECF No. 129, 2:21-cr-00080 (E.D. La. Aug 17, 2023); *see* ROA.42 (charging Messrs. Negrotto and Martinez, only).

[10] On May 6, 2021, the UCs saw Mr. Negrotto, alone, "conduct[] multiple sales of methamphetamine to other individuals" at the shop over the course of several hours. Factual Basis of Ryan Negrotto 7, ECF No. 121, 2:21-cr-00080 (E.D. La. July 7, 2023); *accord* ROA.108 (stating same). *Cf.* Factual Basis of Brandon Martinez 5, ECF No. 129, 2:21-cr-00080 (E.D. La. Aug 17, 2023) (stating Mr. Martinez was present during these drug sales).

The CI also stated he frequently saw Messrs. Negrotto and Martinez at the shop and doing drug deals. Factual Basis of Ryan Negrotto 3, ECF No. 121, 2:21-cr-00080 (E.D. La. July 7, 2023).

[11] ROA.43 (charging June 25, 2021, 2411 Elysian Fields Avenue incident against Mr. Negrotto, only). *See also supra* n.6 (describing this incident).

defined under § 2D1.1(b)(12). *Supra* Pt. I. The government now submits two new arguments for the first time on appeal. Neither the government, nor the Probation Office, offered either of these arguments in the court below. The government's response to Mr. Le's PSR objection argued solely that Mr. Le's "maintained" the motorcycle shop. ROA.207. The Probation Office's response was limited in the same way. ROA.233. Resultingly, the district court did not consider the government's two new arguments and Mr. Le did not have an opportunity to respond to them.

This Court should reject the government's belated attempt to salvage application of the enhancement for several reasons. First, the government has waived these new arguments. While this Court "may affirm if another ground in the record supports [a district court's] judgment," that ground "*must have been 'advanced below,*'" in the district court. *United States v. Jackson*, 27 F.4th 1088, 1091, 1092 (5th Cir. 2022) (quoted citation omitted) (emphasis added);[12] *see also United States v.*

---

[12] The ability to affirm on another ground occurs where a party made the argument in the court below, but the district court did not reach its decision on that ground. *Id.* at 1091 ("The district court need not have reached that ground, but it must have been 'advanced below.'") (citations omitted). And, even for arguments preserved in the court below, affirmance on an alternative basis lies within this Court's discretionary. *Id.* at 1092 (declining to affirm on a second, alternative basis that was not well developed in the district court).

*Solis*, 299 F.3d 420, 456 (5th Cir. 2002) (finding waiver of appellate argument the government failed to raise in relation to PSR in the court below) (citing *United States v. Smallwood*, 920 F.2d 1231, 1235 n.1 (5th Cir. 1991) (noting that the government waives arguments about PSR discrepancies that it did not advance in the district court)).

In *Jackson*, this Court faced the same government attempt to use new arguments on appeal to salvage a sentence. This Court refused to permit this practice, holding "the government never mentioned [the new ground] to the district court. Instead, it argued that *only* those reasons highlighted in Section 1B1.13 qualified as exceptional and compelling under the FSA. Thus, because the government never "advanced" that ground, *we can't use it to affirm.*[13] *Jackson*, 27 F.4th at 1092 (first emphasis in original, second emphasis added). *Jackson* dictates rejection of the government's two new arguments, here. *See also United States v. Hopper*, 934 F.3d 740, 769 (7th Cir. 2019) ("[T]he Government has not

---

[13] The unpublished, nonbinding case cited by the government does not appear to have followed this rule. *See* Brief of Appellee at 12, 16 (citing *United States v. Moreno*, No. 21-50478, 2022 WL 2387356, at *1 (5th Cir. July 1, 2022)); Fifth Cir. R. 47.5.4 ("providing that post-1996 unpublished decisions "are not precedent"). Furthermore, in *Moreno*, the appellant did not bother to file a reply brief to refute the government's argument. *See* Briefing Complete Notice, ECF 63, No. 21-50478 (5th Cir. April 5, 2022) (cancelling reply brief deadline).

offered, nor have we located, any authority to suggest that we can rely on a [new argument] not presented to the district court to affirm a defendant's sentence.").[14]

Additionally, the government's new arguments violate Federal Rule of Criminal Procedure 32 and due process. "'The touchstone of [R]ule 32 is *reasonable* notice' to allow counsel to engage in adversarial testing at sentencing. . . . Rule 32(i)(1)(C) requires a court to permit the 'parties' attorneys to comment on the probation officer's determinations and other matters relating to an appropriate sentence.'" *United States v. Johnson*, 956 F.3d 740, 743–44 (5th Cir. 2020) (vacating and remanding for

---

[14] The government's new "relevant conduct" theory ignores that this Court reads the Guidelines "'as a whole, . . . since the meaning of statutory language, plain or not, depends on context.'" *United States v. Stanford*, 883 F.3d 500, 511 (5th Cir. 2018) (quoting *United States v. Hoang*, 636 F.3d 677, 681 (5th Cir. 2011)). Compare, for instance, U.S.S.G. § 2D1.1(b)(7), which applies that enhancement to "the defendant, *or* a person for whose conduct the defendant is accountable under U.S.S.G. § 1B1.3 (Relevant Conduct)." (Emphasis added). By contrast, U.S.S.G. § 2D1.1(b)(12) focuses only on "the defendant" and does not include a relevant conduct provision. Its commentary is also defendant-specific, asking "whether *the defendant* held a possessory interest" and "the extent to which *the defendant* controlled access to, or activities at, the premises." U.S.S.G. § 2D1.1(b)(12) cmt. n.17 (emphasis added); *see Guzman-Reyes*, 853 F.3d at 264 n.1 (noting § 2D1.1(b)(12)'s commentary "specifically directs" sentencing courts to consider the particular defendant's conduct for the "for the purpose of" element). Finally, cases discussed *supra,* Pt. I, demonstrate the defendant-specific analysis of § 2D1.1(b)(12) and that the enhancement might apply to one co-conspirator, but not to another co-conspirator, based on the facts peculiar to each defendant. *See, e.g., Lord*, 915 F.3d at 1021–22 (refusing to find that Lord "maintained" the premises, despite the government's argument that "in furtherance of their agreement," Laghari (who had a key) used the premises to make the drugs).

resentencing on plain error review) (quoted citations omitted) (emphasis in original). Rule 32's requirements also implicate due process. *Id.* at 744; *but cf. id.* at 747 (finding no need to reach defendant's constitutional claims).

For these reasons, too, this Court should reject the government's new arguments, which the government neither "mentioned" nor "advanced" in the district court, where it bore the burden of proof. *Jackson*, 27 F.4th at 1091–92; *see also United States v. Hankton*, 875 F.3d 786, 793–94 (5th Cir. 2017) (refusing to address, let alone to affirm based on, the government's alternative ground raised at the last minute in the district court and for which the defendant lacked an opportunity to respond in the district court). Because the district court erred in applying the § 2D1.1(b)(12) enhancement and the government failed to carry its burden of proof, this Court should vacate Mr. Le's sentence and remand for resentencing without § 2D1.1(b)(12)'s application.

## CONCLUSION

For the foregoing reasons, this Court should find that the district court erred in applying § 2D1.1(b)(12) to Mr. Le's sentence, vacate his sentence, and remand his case for resentencing without application of §

2D1.1(b)(12). Additionally, as argued in Mr. Le's opening brief, and if not foreclosed by circuit precedent, this Court should find that the district court imposed a substantively unreasonable sentence by applying the Sentencing Guidelines for methamphetamine (actual) and remand for resentencing on that ground as well.

RESPECTFULLY SUBMITTED:

/s/Deborah Ann Pearce
Law Offices of Deborah Pearce
141 Allen Toussaint Boulevard
New Orleans, LA 70124-0000
(512) 809-6269 (telephone)
(504) 324-0882 (facsimile)
federalappeals@cox.net

*CJA-Appointed Counsel for Nghia Le*

# CERTIFICATE OF SERVICE

I certify that on July 22, 2024, I electronically filed this Reply Brief with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to opposing counsel at the U.S. Attorney's Office, Eastern District of Louisiana, Suite 210-B, 500 Poydras Street, Hale Boggs Federal Building, New Orleans, LA 70130.

I further certify this document meets the required privacy redactions; it is an exact copy of the paper document; and, the document has been scanned and is virus free.

Finally, I certify that a paper copy of this Reply Brief was sent via first class mail, postage prepaid, to:

NGHIA LE
INMATE NUMBER 54329-509
FCI Yazoo City Medium
Federal Correctional Institution
P.O. Box 5000
Yazoo City, MS 39194

Counsel has communicated about the substance of this brief with Nghia Le, who speaks and understands English.

/s/Deborah Ann Pearce

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1, this document contains 4,869 words.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document was prepared in a proportionally spaced typeface using Century Schoolbook typeface in 14-point font size.

/s/Deborah Ann Pearce