# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
January 16, 2025
Lyle W. Cayce
Clerk

No. 23-30888

United States of America,

*Plaintiff—Appellee,*

versus

Nghia Le,

*Defendant—Appellant.*

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:21-CR-80-3
_____

Before Jolly, Graves, and Wilson, *Circuit Judges.*

Cory T. Wilson, *Circuit Judge*:

An undercover investigation revealed that Nghia Le supplied methamphetamine sold at a motorcycle shop rented by Ryan Negrotto. Le was indicted, and one of the counts charged Le, Negrotto, and another co-conspirator with using *or* maintaining a drug premises. While Le and the Government agree that Negrotto plainly *maintained* the shop as a drug premises, Le contends that he only *used* it. The factual basis supporting Le's guilty plea states:

> [Le] and [Negrotto] did unlawfully and knowingly use and maintain [the] motorcycle shop . . . for the purpose of

> distributing and using methamphetamine . . . . [Le] and his co-conspirators . . . used the shop as a location where [they] would knowingly partake in possession and distribution of methamphetamine. Although the premises may have served other purposes, the distribution of methamphetamine was a significant reason why [Le] used the shop.

Relying solely on that statement—which Le admitted—at sentencing, the district court applied an offense-level enhancement on the ground that Le personally "maintained a premises for the purpose of manufacturing or distributing a controlled substance." U.S.S.G. § 2D1.1(b)(12).

Finding insufficient factual support for the conclusion that Le maintained the motorcycle shop, we hold that the district court clearly erred in resting its sentencing enhancement on Le's ambiguous admission alone. Accordingly, we vacate Le's sentence as to the methamphetamine charges and remand for resentencing as to those counts. Otherwise, we reject Le's argument that his sentence is substantively unreasonable and affirm.

## I.

After receiving a tip that drugs were being sold at a New Orleans motorcycle shop "co-rente[d]" by Ryan Negrotto, the Bureau of Alcohol, Tobacco, Firearms and Explosives began an undercover investigation. A confidential informant (CI) visited the shop and, through Negrotto, scheduled a first purchase of methamphetamine. In March 2021, the CI, joined by two undercover agents (UCs), arrived at the shop to make the purchase. The shop was closed, and when Negrotto arrived, he told the CI and UCs that, though he did not have the methamphetamine on hand, his "plug" was on the way. At some point, Negrotto contacted Appellant Nghia Le about the potential sale. When Le arrived at the shop, he entered carrying methamphetamine, "informed the parties he wished for the UCs to wait

outside of the shop during the drug sale," and sold the drugs to the CI after the UCs exited.

In April 2021, the CI arranged for another methamphetamine buy through Negrotto, who again found Le willing and able to supply drugs for the sale. In May, after the UCs went to the shop to complete the purchase, Negrotto arrived, invited them in, and told them they would have to wait for the drugs to arrive. While waiting, the UCs witnessed Negrotto make multiple sales of methamphetamine to others. Eventually, Le arrived, learned from Negrotto how much methamphetamine the CI and UCs wanted, left the shop, returned with the drugs, and was present while Negrotto weighed and sold the drugs to the CI and UCs. That June, Negrotto, Le, and three UCs began arranging, in part at the shop, a larger methamphetamine sale that was to occur elsewhere. When the time came for the sale, the Louisiana State Police arrested Negrotto at the parties' agreed-upon meeting place.

In July 2021, Le was charged in an indictment against Le, Negrotto, and a third co-conspirator with distributing methamphetamine, conspiring to distribute methamphetamine, and using or maintaining a drug premises. That December, a superseding indictment added marijuana and gun charges stemming from Le's prior arrest for selling marijuana. Incident to that arrest, detectives found 34 pounds of marijuana that Le hid in a storage unit he rented. Detectives also intercepted firearms and 45 pounds of marijuana that Le stored in his apartment.

In May 2023, Le pled guilty to all charges. Count 8 ("Using or Maintaining a Drug Premises") alleged that Le, Negrotto, and the third co-conspirator "unlawfully and knowingly use[d] and maintain[ed]" the motorcycle shop as a drug premises in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2. At Le's rearraignment, the district court stated twice that

Count 8 charged Le with "using or maintaining a drug premises." But it explained Count 8 only with reference to *maintaining* the premises; the court informed Le that, for him to be found guilty of the charge at trial, the Government would have to prove that he "knowingly and intentionally maintained a place for the purpose of using or distributing a controlled substance" and that "the drug activity was a significant reason why [he] maintained the place." By contrast, the factual basis that supported Le's guilty plea, and that Le read and signed, centered on Le's *use* of the premises:

> [Le] admits that he and [Negrotto] did unlawfully and knowingly *use and maintain* [the] motorcycle shop . . . for the purpose of distributing and using methamphetamine . . . . [Le] and his co-conspirators . . . *used* the shop as a location where [they] would knowingly partake in possession and distribution of methamphetamine. Although the premises may have served other purposes, the distribution of methamphetamine was a significant reason why [Le] *used* the shop.

(Emphases added).

In calculating Le's recommended offense level, the Probation Office added a two-level enhancement under U.S.S.G. § 2D1.1(b)(12) on the ground that "[Le] and co-conspirators *maintained* [the motorcycle shop] for the purpose of distributing and using methamphetamine." (Emphasis added). With the "use"/"maintain" distinction and its import now apparent, Le objected to the enhancement, arguing that he did not maintain the shop because he did not "own or lease" it, "store anything" at it, "have unimpeded access" to it, have any "level of access, dominion[,] or control" over the shop, "direct any of the activities" of it, or "have any control over the people associated with" it. In response, the Government observed that Le had admitted via the factual basis that the motorcycle shop, in the Government's words, "was in fact maintained" as a drug premises.

4

No. 23-30888

At sentencing, the district court overruled Le's objection to the enhancement, quoting the factual basis:

> At the time of his plea, . . . [Le] acknowledged the factual basis was accurate, an accurate summary of the instant offense . . . . [Le] "[a]dmits that he and Negrotto did unlawfully and knowingly use and maintain [the] motorcycle shop . . . for the purpose of distributing and using methamphetamine as contained in Count 8 of the superseding indictment." Although[] the premises may have served other purposes, the distribution of methamphetamine was actually a significant reason why [Le] used the shop,[1] according to the two-level enhancement. It was appropriately applied[,] and the objection is overruled.

The district court then denied Le's motion for a downward departure. The court imposed a sentence of 135 months' imprisonment, the bottom of the guidelines range of 135–168 months, for the methamphetamine charges. It also ordered a mandatory-minimum 60-month consecutive sentence for the gun charge, *see* 18 U.S.C. § 924(c)(1)(A)(i), (D)(ii), and a 60-month concurrent sentence for the marijuana charges, for a total sentence of 195 months in prison. As Le recognizes, "he was subject to a ten-year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A)(viii)" for the methamphetamine distribution charges and therefore was facing a combined "mandatory minimum of 180 months" as a sentence floor.

---

[1] The district court's statement about why *Le* used the shop—especially given its earlier acknowledgement that Le's sole argument was that he did not personally maintain the shop—shows that the district court applied the enhancement on the ground that Le himself maintained the shop. Indeed, in arguing on appeal that the enhancement "also applies through the relevant conduct of Le's co-conspirator Negrotto," the Government concedes that "the district court did not apply the enhancement for th[at] reason."

No. 23-30888

Le now appeals, challenging the district court's application of the sentencing enhancement as well as the substantive reasonableness of his sentence.

## II.

Le's primary argument on appeal is that the district court erred in applying U.S.S.G. § 2D1.1(b)(12)'s offense-level enhancement on the ground that Le maintained the motorcycle shop. Le convincingly reasons that, had the district court not applied the enhancement, it would have likely imposed the combined mandatory-minimum sentence of 180 months, rather than the 195-month sentence actually imposed.[2]

Section 2D1.1(b)(12) calls for a two-level increase to a defendant's offense level "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance." The Guideline's application note about the enhancement states in part: "Among the factors the court should consider in determining whether the defendant 'maintained' the premises are (A) whether the defendant held a possessory interest in (e.g., owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises." U.S.S.G. § 2D1.1 cmt. n.17. The note also explains that the enhancement applies to "storage of a controlled substance for the purpose of distribution." *Id.*

"A district court's application of § 2D1.1(b)(12) is a factual finding reviewed for clear error." *United States v. Guzman-Reyes*, 853 F.3d 260, 263 (5th Cir. 2017) (citation and internal quotation marks omitted). "Thus, the

---

[2] The district court sentenced Le to 135 months' imprisonment for the methamphetamine charges based on the enhanced range of 135–168 months. At sentencing, the district court emphasized that 135 months was the bottom of the guidelines range. Without the enhancement, the range would have been 108–135 months, the bottom of which is significantly lower than the 120-month mandatory minimum.

question before us is whether the district court's determination is plausible in light of the record read as a whole." *Id.* (same). "The Government has the burden of demonstrating by a preponderance of the evidence the facts necessary to support a Guidelines enhancement." *United States v. Abrego*, 997 F.3d 309, 312 (5th Cir. 2021).

### A.

Setting aside for the moment the narrative contained in the factual basis, it is not plausible to find that Le maintained the motorcycle shop based on evidence elsewhere in the record. Our analysis centers on the two factors set forth in the Guideline's application note for § 2D1.1(b)(12): (1) possessory interest, and (2) control. U.S.S.G. § 2D1.1 cmt. n.17. Regarding the first factor, the Government acknowledges that, unlike Negrotto, "Le did not have an individual possessory interest in the shop." As for the second, the Government has not demonstrated that Le "controlled access to, or activities at, the premises" to any significant extent. *Id.* The record paints a picture of Le as a drug supplier occasionally invited by Negrotto to Negrotto's shop to help him complete some of the drug deals that arose there. As the Government explains, "Negrotto, from the shop, . . . determined who would obtain the methamphetamine for sale—another co-conspirator on at least one occasion, and Le on at least three occasions." By all accounts, Le—like the CI and UCs—required Negrotto's "express permission and physical assistance" to access the shop; there is no evidence the Le "could open and use the [shop] without [Negrotto's] permission." *See United States v. Lord*, 915 F.3d 1009, 1022 (5th Cir. 2019).

To be sure, on one occasion, Le asked the UCs to step outside the shop while he sold methamphetamine to the CI inside. That fact suggests that Le's involvement in the operation carried with it some degree of influence over activities at the shop—when he was on site and involved in a

sale there. But that lone incident does not show that Le "controlled access to, or activities at, the premises." U.S.S.G. § 2D1.1 cmt. n.17. Looking to caselaw applying 21 U.S.C. § 856 (the statute underpinning Count 8), as this court does in § 2D1.1(b)(12) cases, the evidence here does not plausibly support a conclusion that Le "was in charge of the premises," "exercised supervisory control over the premises," or "exercised *sufficient* dominion and control over the premises" to have maintained the shop. *Guzman-Reyes*, 853 F.3d at 264 (citations and internal quotation marks omitted). As this court has explained, "not just any showing of dominion and control will suffice to support a maintenance finding." *Id.* (quoting *United States v. Morgan*, 117 F.3d 849, 856 (5th Cir. 1997)).

**B.**

Given the sparse factual record on the point, the question becomes whether Le's admission of the narrative in the factual basis is enough to render the district court's maintenance finding plausible. It is not.

Critically, it is not even clear what Le admitted. Both the Government and the district court employed the words "use" and "maintain" almost interchangeably—or at least without clearly and consistently differentiating between them: Count 8 of the indictment, titled "Using *or* Maintaining a Drug Premises," went on to accuse the three co-conspirators of "us[ing] *and* maintain[ing]" a drug premises. (Emphases added). At rearraignment, after stating twice that Count 8 charged Le with using *or* maintaining a drug premises, the district court described the count as charging Le with *maintaining* a drug premises. And the Government-drafted factual basis states that "[Le] and Negrotto . . . use[d] *and* maintain[ed]" the shop but goes on to support that statement with two sentences that only mention Le's *use* of the shop. Thus, when Le admitted the factual basis, he may have "admitted" one of a number of possible "and/or" permutations—including

that Negrotto *maintained*, while Le only *used*, the shop as a drug premises. Compounding the issue, relying on Le's admission to find that he maintained the shop requires overlooking much of the factual narrative itself as well as an evidentiary record that militates to the contrary.

Granted, it cuts against Le that no Fifth Circuit case holds that a district court clearly errs in applying a sentencing enhancement based solely on a defendant's admission. Le observes that, to provide an adequate factual basis for a guilty plea, "[t]he record must contain factual allegations indicating that the defendant committed each element of the crime, rather than mere conclusory statements of the legal elements." *United States v. Jones*, 969 F.3d 192, 196 (5th Cir. 2020) But Le does not question the adequacy of the factual basis as support for his guilty plea, so this observation, though correct, is somewhat misplaced.

The Government points for support to *United States v. Lawrence*, 920 F.3d 331 (5th Cir. 2019). In *Lawrence*, this court stated that, in imposing the challenged sentence, "[t]he district court was entitled to rely on [the defendant's] admissions in [a] plea agreement" containing a factual basis. *Id.* at 338. But *Lawrence* is readily distinguishable, as our court deemed application of the enhancement at issue plausible in light of "[a]mple evidence," namely, numerous "admissions and . . . other circumstantial evidence." *Id.* at 337. Here, there is little if anything more than the bare admission itself. And the requisite finding for the enhancement in *Lawrence* concerned a question about mental state most readily answered via admission: whether the defendant "knew his files were accessible to others online." *Id.*[3]

---

[3] The Government also quotes *Blackledge v. Allison*'s statement that "[s]olemn declarations in open court carry a strong presumption of verity." 431 U.S. 63, 74 (1977).

No. 23-30888

Ultimately, Le's muddled admission does not in itself make it plausible that he maintained the motorcycle shop for the purpose of distributing methamphetamine. As discussed above, the critical passage in the factual basis speaks of (1) Le and Negrotto (who undisputedly maintained the premises) *using and maintaining* the shop, (2) Le and his co-conspirators *using* the shop, and (3) Le *using* the shop. Tellingly, in responding to Le's objection to the enhancement, the Government elided the ambiguity in the factual basis, characterizing these statements as Le's admission that the shop "was in fact maintained" as a drug premises. Maybe so, but that does not equate to Le's admitting that *he*, as opposed to Negrotto, maintained it. *Cf.* FED. R. CRIM. P. 11(b)(3) (requiring a district court to determine that there is a factual basis for a guilty plea); *United States v. Broussard*, 669 F.3d 537, 546 (5th Cir. 2012) ("The intention of Rule 11(b)(3) is to protect a defendant who voluntarily pleads guilty . . . without realizing that his conduct does not actually fall within the definition of the crime charged." (citation and internal quotation marks omitted)).

Given the dearth of other evidence that Le maintained the shop—and the fact that the context of the admission calls into question what Le truly admitted—it was reversible error for the district court to apply § 2D1.1(b)(12)'s offense-level enhancement based solely on a single, conclusory statement in the factual basis that Le and Negrotto used and maintained the shop.

## C.

The Government urges two alternative grounds for affirming the enhancement. First, the Government argues that § 2D1.1(b)(12) "applies

---

True enough, but as discussed above the line, it is unclear what Le actually "declared" on the specific point at issue when he admitted the factual basis.

through the relevant conduct of Le's co-conspirator Negrotto."[4]  Second, the Government contends that "the enhancement was also appropriate based on Le's separate marijuana trafficking offenses for which he pleaded guilty in this case."  But the Government did not make either of these arguments during sentencing, and the district court framed its decision to apply the enhancement solely on Le's admission of the factual basis regarding his methamphetamine-related charges.

As a general rule, we may affirm the district court's judgment on a ground that the district court did not reach, but the ground "must have been advanced" before that court.  *United States v. Jackson*, 27 F.4th 1088, 1091 (5th Cir. 2022) (citation and internal quotation marks omitted).  Similarly, "[w]e may affirm an enhancement on any ground supported by the record." *United States v. Garcia-Gonzalez*, 714 F.3d 306, 314 (5th Cir. 2013).  But *Garcia-Gonzalez*, where the court affirmed the sentencing enhancement at issue, is at least somewhat distinguishable.  There, this court affirmed despite a potential factual issue undermining the reasoning supporting the district court's determination because the Probation Office rightly recommended applying the enhancement based on another fact that the district court adopted.  *Id.* at 314–15.  Here, by contrast, neither the Probation Office nor the Government urged the district court to apply § 2D1.1(b)(12) based on

---

[4] This court has not addressed whether a district court may apply § 2D1.1(b)(12) to a defendant based on his co-conspirator's "jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B).  There is arguably a circuit split on the issue. *Compare United States v. Miller*, 698 F.3d 699, 706 (8th Cir. 2012) ("assum[ing] that § 2D1.1(b)(12) . . . requires proof that the specific defendant being sentenced maintained the premises 'for the purpose of' drug manufacture or distribution"), *with United States v. Rich*, 14 F.4th 489, 496–97 (6th Cir. 2021) (calling *Miller*'s language "dicta" and agreeing with *United States v. Holmes*, 767 F. App'x 831, 839 (11th Cir. 2019), that "nothing in § 2D[1].1(b)(12) 'otherwise specifies' that it cannot be applied based on jointly undertaken criminal activity" (alteration accepted)).

No. 23-30888

Negrotto's conduct as Le's co-conspirator,[5] or on Le's stashing marijuana in his storage unit and apartment.

Given the limited record in the district court and briefing on appeal regarding these newly raised grounds for affirmance, we decline to reach them in the first instance. Instead, we vacate Le's 135-month sentence as to the methamphetamine charges (i.e., Counts 1, 3, 4, and 8) and remand for the district court to address the Government's alternative grounds for applying the § 2D1.1(b)(12) enhancement with the benefit of more developed argument from the parties.[6]

## III.

Le's secondary argument, that his sentence is substantively unreasonable, lacks merit. Le moved the district court to "depart or vary downward at sentencing based on his personal background and characteristics as well as the [ten-to-one] disparity in punishment for methamphetamine (actual) versus methamphetamine (mixture)." The district court denied Le's motion. On appeal, Le focuses his argument on the alleged lack of an empirical basis for the Guidelines' dissimilar treatment of actual methamphetamine and methamphetamine mixture. He also takes issue with "the disparate treatment [methamphetamine-offense] defendants

---

[5] We note, however, that in advocating for the enhancement below, the Probation Office and the Government both represented that Le *and his co-conspirator(s)* maintained the motorcycle shop. And Le states in his opening brief that Negrotto "clearly did 'maintain' the shop."

[6] Le contends that the Government has waived these arguments, and he asks this court to "remand for resentencing without § 2D1.1(b)(12)'s application." But the cases Le cites in support of his waiver contention are inapposite, as they concern the Government's waiver of error arising from discrepancies in PSRs. *See United States v. Solis*, 299 F.3d 420, 456 (5th Cir. 2002); *United States v. Smallwood*, 920 F.2d 1231, 1235 n.1 (5th Cir. 1991).

receive in comparison to defendants committing other, similarly serious drug offenses," but he has forfeited that argument because he did not make it before the district court.

Le concedes that his substantive unreasonableness arguments "are likely foreclosed by circuit precedent." Indeed, they are. *See United States v. Lara*, 23 F.4th 459, 486 (5th Cir.), *cert. denied*, 142 S. Ct. 2790 (2022). In *Lara*, we held that *United States v. Duarte*, 569 F.3d 528 (5th Cir. 2009), and *United States v. Mondragon-Santiago*, 564 F.3d 357 (5th Cir. 2009), "foreclose[d] [the defendant's] argument that because the methamphetamine Guideline is not empirically-based, her *below*-guidelines sentence was substantively unreasonable." *Lara*, 23 F.4th at 486 (emphasis added). In reaching that result, we favorably cited *United States v. Labrador*, 734 F. App'x 270, 271 (5th Cir. 2018), as "concluding that *Mondragon-Santiago* 'foreclose[s]' the argument that a '*within*-guidelines sentence is substantively unreasonable because the methamphetamine Guideline is not based on empirical evidence.'" *Lara*, 23 F.4th at 486 (same). Applying this court's precedent, therefore, we reject Le's challenges to the substantive reasonableness of this sentence.

## IV.

Based on the foregoing, we vacate Le's sentence as to Counts 1, 3, 4, and 8, and remand for resentencing as to those counts. Otherwise, we affirm his conviction on all counts and his sentence as to the remaining counts against him. On remand, the district court may reconsider whether to apply the U.S.S.G. § 2D1.1(b)(12) enhancement to Le's offense level in a manner consistent with this opinion.

AFFIRMED in part; VACATED AND REMANDED in part.